RIDDLE *v.* LITTLEFIELD & A.

By the lease of a building, everything which belongs to it, or is used with it, and which is reasonably essential to its enjoyment, passes as incident to the principal thing and as a part of it, unless especially reserved.

A leased to B " a certain store * * known as No. 191 Elm street;"—*Held*, that by the terms of the lease B acquired the right to the use of the outside walls of the building, for the purpose of posting bills and notices thereon; and that A could not convey this incident right to a third person.

ASSUMPSIT, by John A. Riddle against Littlefield & Hayes, for the use and occupation of a certain part of the building of the plaintiff called Riddle's building, situated on Elm and Hanover streets in Manchester, for a long time used and occupied by the defendants by their request and by the permission of the plaintiff. Also, for money had and received by the defendants for the plaintiff's use, and for money due and owing to the plaintiff, received by the said defendants for the benefit of the said plaintiff. Plea, the general issue. Action tried by the court.

The plaintiff owned the building on the corner east of Elm and north of Hanover streets, and this suit was brought to recover pay for the use of a part of the outside of the southerly front wall of said building, on Hanover street, for the purpose of posting bills and notices upon. The defendants had used said outside of said wall for said purposes

for about a year before the date of the writ, and had received $15 for such use from those who had hired it; and it was agreed that, if the plaintiff is entitled to recover anything in this suit, his damages shall be $15. The defendants have a lease of the corner store in said building; this lease was given originally by the plaintiff to Harrington and als., dated October 19, 1868, which lease was assigned by said Harrington and als. to these defendants, October 19, 1869. Said premises are described in the lease as " a certain store at the corner of Elm and Hanover streets in said Manchester, in Riddle's building, so called, being the same now occupied by Thomas Dunlap, and known as No. 191 Elm street, with all the privileges and appurtenances to the same belonging," with a right to the lessees to put in an additional window in the south side of said store if they shall so elect, and the right to construct in said store a bank vault such as they may see fit, and for that purpose to connect it with piers constructed in the cellar under said store. Said window has never been put in, nor said bank vault; but if said window had been put in it would have been in a part of this space, the outside of which the defendants have used, and for which they are sought to be charged in this case. It appeared that said Thomas Dunlap occupied this store as tenant at will under the plaintiff, in 1867, and for several years previous, and so down to the date of the lease to Harrington and als., and for a year under that lease to the time when the same was assigned to these defendants; and it appeared that so long as Dunlap occupied the store the plaintiff occupied this space on the outside of this wall, and let the same to others to post bills on, without objection from said Dunlap, and with his knowledge and consent; but after the defendants came in possession, they have used the same space and let the same, claiming to hold the same under and by virtue of their lease.

The court ruled *pro forma* that the plaintiff was not entitled to recover, and the plaintiff excepted. Judgment to be rendered for the plaintiff for $15, or for the defendants, as the opinion of the court shall be. Questions of law reserved.

*B. P. Cilley;* for the plaintiff.

The only question in this case, to which the attention of the court is called, as we understand it, is, whether " the outside of the southerly front wall" of Riddle's building is or is not a part of the premises included in the lease of the plaintiff to Harrington and others, under which the defendants justify.

The defendants claimed, at the trial, that this " outside " use of the wall was conveyed by virtue of the clause in the lease "with the privileges and appurtenances to the same belonging;" and the inference is, that, without this, there is no pretence that they had any right to the premises; and we start with the presumption that this is their position now.

The relation of landlord and tenant is their agreement, express or

implied, and that only. Taylor L. & T., sec. 14. The lease in question is not of " land," " house," " store," or term general carrying land, but of a " store " " in Riddle's building," &c.; and " nothing else will pass except what falls with the utmost propriety under the term made use of." 2 Bl. Com. 19. Further, " being the same [store] now occupied by Thomas Dunlap, * * with the privileges and appurtenances to the same belonging." See lease of Oct. 19, 1868.

This is matter of description and limit, to which the defendants are held, for they were bound to take notice of the precise occupancy by Dunlap at the time the lease was executed,—which occupancy was, as the case finds, restricted to the inside of this south wall; for its outside (the premises in dispute) was then claimed, rented, and let by the plaintiff for his own use,—posting bills, &c.,—with the knowledge and consent of said Dunlap. *Dunklee* v. *W. R. R. Co.*, 24 N. H. 495, 507. That the defendants' assignors, the original lessees, so understood the limit of their possession, see the subsequent permission in the lease to " put in an additional window " through the premises in question, and their reserved right " to remove all such vaults and fixtures as they may erect in said store; "—see also their subsequent writing of June 28, 1869, given " in order to the more full enjoyment " of said store, whereby they obtained of the plaintiff permission to remove an " entrance to the cellar," the only approach to which is from the outside of the building, and which " entrance " is in the southerly front wall in question.

The case further finds that the premises were, for several years before the lease to Harrington and for more than a year thereafter, occupied, used, and let by the plaintiff for his own use, as now claimed, and Harrington and others, for this length of time, acquiescing and submitting to such use by the plaintiff, shows, or tends to show, their understanding at the time of the execution of the lease; and we think that they or their assignees, the defendants, are now estopped from claiming the premises under said lease.

The words " privileges and appurtenances " carry no more than is necessary to the use of the thing granted. " So, by the grant of anything, a liberty which was convenient shall not be granted as incident, unless it be of necessity." Com. Dig., *Grant cum Pertinentiis* (E. 11). " No thing passes as incident to a grant, but that which is necessary for its reasonable and proper enjoyment." MARSHALL, C. J., quoted in *Bean* v. *Coleman*, 44 N. H. 544;—see, also, Taylor L. & T., secs. 161, 162; also, *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190.

We contend the right of the plaintiff to the use of the outside of this wall was as that of the defendants to the inside, an " incorporeal right," both alike, and " that a thing incorporeal cannot be appendant or appurtenant to another thing incorporeal." Com. Dig., Appendant and Appurtenant, C. The use of this wall by the plaintiff in no way interfered or infringed on the defendants' use of the store, nor was it necessary to the full enjoyment thereof.

" It is not necessary that the grantor should expressly reserve any

right which he may exercise consistently with a fair enjoyment of the grant. Such rights remain with him because they are not granted; and for the same reason the exercise of any of them cannot be complained of by the grantee," &c. *Bean* v. *Coleman*, already cited; same doctrine in Washburn on Easements and Servitudes 31, and following.

If it shall be held that this use of the plaintiff of the premises was ever appurtenant to the use of any former tenant of said store, then we say, before and at the time of the making of this lease the plaintiff's interest had been severed; and, "if a thing appendant be ever severed, it shall never afterwards be appendant." Com. Dig., App. & App., D. It will be observed, that the use by the defendants of the premises is not for a "store," or any purpose connected therewith, or pertaining thereto, or any kind of trade, but solely for purposes entirely foreign to trade, or the occupancy of any store. They claim the right to sue them for posting public posters, or bills, &c., of theatrical or other public shows and exhibitions, which is repugnant to the purpose of their lease, and for which they can have no shadow of right. It is in no sense the contract of the parties. Taylor L. & T., secs. 251, 252. The tenant claims a greater estate than he received from his grantor, which, under the common law, produced a forfeiture. *Ib.*, sec. 274.

That the plaintiff's claim to the premises is altogether the most reasonable, may be inferred from the consideration that the defendants have made an express covenant to "maintain and repair," which, if their claim to the premises is sustained, would, we submit, leave Riddle's building to be rebuilt by them " in case of its destruction by fire or otherwise "—Taylor L. & T., sec. 357—a heavier responsibility, we imagine, than tenants of stores intend to assume.

The covenant of "quiet enjoyment" cannot attach to the use "of a part of the outside of the southerly front wall of said building on Hanover street, for the purpose of posting bills and notices upon," for which the plaintiff has always claimed, occupied, and received rent; and which interest in said building he has never conveyed to the defendants, expressly or by implication.

*Morrison, Stanley & Hiland*, for the defendants.

I. The first position of the defendants is, that the premises conveyed by the word "store" includes not only the inside of the premises conveyed, but also the outside up to the floor of the second story. A decision of this case requires no fine-spun theories, no distortion of terms, but a plain, common-sense, ordinary use of the word. There were no exceptions or reservations in this lease, and we say that custom and usage may well be considered in determining what passed by the word "store." "The grant of a thing passes the incident as well as the principal, though the latter only is mentioned." Taylor's Land. and Ten., sec. 161. The premises were "a store in Riddle's building," and, although the plaintiff's counsel, in his brief, has italicized the word "in," he cannot in that way make it read or mean *inside*, but

simply *in*, simply locating the store, saying that it was a part of that building, it being the usual and ordinary word used for that purpose. Suppose Thomas Dunlap did allow the plaintiff to use the south wall outside this store to post bills upon before this lease was granted, and that this store was further described in the lease as "being the same now occupied by Thomas Dunlap:" what of it? It was simply saying that it was not only a store in Riddle's block, but (as there were others in the same block) also the one that Dunlap then occupied. If the intention of the parties had been what the plaintiff would have you think it was, they would have said, being the same *premises*, etc., or some term limiting the lessee's enjoyment to the same that was then enjoyed by said Dunlap. And we are not held by this expression, "being the same store," etc., for it is not a limit, and we submit the case does not find that the premises in dispute were "*then claimed* and *rented* by the plaintiff," but that they were let with Dunlap's consent; and the fact that Dunlap's consent was first obtained, conclusively shows that Dunlap not only claimed the said wall, but that his claim was acquiesced in by the plaintiff, otherwise Dunlap's consent would not have been obtained. And the plaintiff well knows that it was necessary to obtain his consent to "put in an additional window," and to remove "an entrance to the cellar," granting our lease covers all we claim, that being such a destruction of the premises as would have made the lessees liable without his permission. Now if the use of the outside walls of the store did not pass with the word "store," then a lease of a store situated so and so gives the lessee no rights except inside,—no right to put out his sign over the door or attach it thereto, to place his wares outside his door, or to govern in any way the exterior; but his lessor would have the full right to its use, to place a fruit-stand under the lessee's window, or to put an advertisement of a rival trader upon the lessee's very door.

II. But if it should be holden that the word "store" alone does not pass the entire walls so as to give the lessee any rights therein, then we say that such rights must pass by virtue of the clause "with the privileges and appurtenances to the same belonging." An appurtenant being only one species of incident, the word incident, as used by the plaintiff, cannot apply here. An appurtenant is that which belongs to another thing, but which had not belonged to it immemorially. *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190. It is used to signify something belonging to another thing as principal, and which passes as incident to the principal thing. Bouvier's Dic., Appurtenances. *Bean* v. *Coleman*, cited by plaintiff, refers to a right of way, and throws no light upon this question,—no more than the citation 3 N. H. 190 does. And under the head of "privileges and appurtenances" we are thrown back upon the question, What did belong to and pass with the store? If, as the plaintiff claims, nothing unless it be of necessity, "no more than is necessary to the use of the thing granted," then we might have the novel sight of these outer walls on both sides covered with rival advertisements, the front windows pasted over with placards, the door

made a bulletin of some real estate broker, and *ad infinitum*, with no redress; for the lessee could stay inside with his wares, with neither sign upon the outside, awning, or use of his windows. This is too absurd to suppose; it can neither be common sense nor law. But it is said that the defendants claim the right to use the premises for purposes foreign to its use as a store. What of it? If they have the right to the premises, they have the right to use them for what they see fit, there being no limitation in their lease, so long as they do not injure the building, or make it offensive to the public. And when the plaintiff is called upon to " maintain and repair," in case of fire or otherwise, it will be time enough then to consider his liability in that respect. And we respectfully submit that the ruling of ·the court at the trial term should be sustained.

FOSTER, J. By the terms of the lease of " a certain store    *    *    in Riddle's building,    *    *    being the same now occupied by Thomas Dunlap, and known as No. 191 Elm street," the lessee acquired the right to the use and occupation of the outside of the walls belonging to that portion of the tenement which included the store. He took it as parcel of the demised premises proper, and not as a thing technically appurtenant thereto. The outside wall of a building leased or conveyed, passes by the lease or deed as much as the inside of the same wall.

Appurtenances are defined,—" Things belonging to another thing, as principal, and which pass as incident to the principal thing." Bouv. Law Dic. Another definition is,—" A thing used with and related to or dependent upon another thing *more worthy*, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant." 3 Washb. Real Prop. *626, *627 ; Com. Dig. Appendant and Appurtenant (A.). The word " appurtenances " has a technical signification, and, when strictly considered, is employed in leases for the purpose of including any easements or servitudes used or enjoyed with the demised premises. Smith & Soden's Landlord and Tenant 86. When the term is thus used, in order to constitute an appurtenance there must exist a propriety of relation between the principal or dominant subject, and the accessory or adjunct, which is to be ascertained by considering whether they so agree in nature and quality as to be capable of union without incongruity. *Ibid.*

These distinctions are refined, and in the common practice of modern conveyancing are not much regarded,—the term appurtenances, in a vast majority of cases in deeds and leases, having, in fact, I presume, no meaning whatever in the minds of the contracting parties, who append the unnecessary formula by force of the custom and example which has for so long a time applied it to grants and leases of a principal thing, to which no inferior easement or servitude whatever, in fact, belongs.

If employed in its true and technical sense, it may sometimes have

such meaning and importance, that, if omitted, an appurtenance will not pass. And the use of such superfluous formula is ordinarily harmless, and will seldom lead to confusion or misunderstanding. But, ordinarily, whatever easements and privileges legally appertain to property, pass by a conveyance of the property itself, without any additional words. Smith & Soden Land. and Ten. 86–88. " The grant of a thing passes the incident as well as the principal. though the latter only is mentioned ; and this effect cannot be avoided without an express reservation." Thus, a garden is parcel of a house, and passes without the addition of the word " appurtenances." Taylor Land. and Ten., sec. 161. A grant of a thing will include whatever the grantor had power to convey, which is reasonably necessary to the enjoyment of the thing granted. 3 Washb. Real Prop. *626. Grant of a messuage passes the house, with the close upon which it is built, and "the little garden, yard, field, or piece of void ground, lying near and belonging to the messuage." Shep. Touch. 94 ; Co. Litt. 216 ;—see *Gibson v. Brockway,* 8 N. H. 465. Messuage is a term of large signification, always including land—2 Wendell's Blackstone *17, note 4 ; and, in *Scholes* v. *Hargreaves,* 4 D. & E. 46, it was applied to a house and land, including a shop for the sale of wares. If a house or a store be conveyed, everything which belongs to it or is in use with it, and whatever is essential to the enjoyment, passes as an incident, unless specially reserved. When anything is granted, all the means to attain it, and all the fruits and effects of it, are also granted, and will pass inclusive, without the words " *cum pertinentiis ;*" for it is a maxim, *cuicunque aliquid conceditur, conceditur etiam id sine quo res ipsa non esse potest.* 4 Gr. Cruise *265 ; Broom's Leg Max. *362 ; Shep. Touch. 89 ; 4 Kent. Com. *467 ; *Pomfret* v. *Rickroft,* 1 Saund. 321, 323 ; *United States* v. *Appleton,* 1 Sum. 492 ;—and see *Cocheco Man. Co.* v. *Whittier,* 10 N. H. 305 ; *Kittredge* v. *Woods,* 3 N. H. 503 ; *New Ipswich Factory* v. *Batchelder,* 3 N. H. 190 ; *Winchester* v. *Hees,* 35 N. H. 43 ; *Dunklee* v. *Wilton Railroad,* 24 N. H. 489.

Certain words usually employed in a lease, as house, farm, land, and the like, have, if necessary, a very wide meaning ; and where such general and comprehensive terms are employed, all things usually comprehended within the meaning thereof will pass, unless the circumstances of the case show, very clearly, that the intention of the parties was otherwise. 1 Pars. Con. 499.

Now, it will hardly be contended that the outside wall of a store or house is not essential for the reasonable and proper enjoyment of the interior of the building. The outer side of the wall is but one side of the same wall that has an inner side ; and the removal of the wall removes both sides.

If, then, a lessee or grantee may have the wall which he pays for, it would seem that he should be entitled to the use of it, not only for purposes indispensable to the occupation of the building, but also for any purpose of service or profit not inconsistent with the lawful and reasonable enjoyment of the property.

If he uses the tenement for a store, he would ordinarily be entitled to affix his signs to the outer wall ; an awning, also, if such appendage should be deemed necessary or convenient. He may suspend his wares upon the building, if nobody is incommoded thereby ; and he may cover the outer walls with his advertisements of the merchandise which he keeps for sale within, if he does not injure the building, nor obstruct the public passage, nor offend the public eye and taste by unseemly exhibitions, or otherwise violate the laws. And if he may thus encumber and cover the exterior walls of his store, clearly his lessor cannot do the same thing at the same time. The occupation by both parties to the lease, for incongruous purposes, is impossible. If the premises are leased for a clothing store, for example, the lessor cannot use for a bulletin-board the space which the lessee may reasonably, properly, conveniently, and profitably occupy with the ready-made garments which he there suspends for exhibition and sale.

Who, then, shall occupy the exterior walls of the demised building ? The landlord, who for a sufficient consideration has parted with the possession and use of the property, *usque ad filum viæ* (if it is bounded by a street) ? or the tenant, who cannot have the full and complete as well as reasonable beneficial enjoyment of the property for which he pays rent, without the opportunity to display his wares and his advertisements upon the external walls of the building ?

The lessee who affixes his signs and advertisements upon the wall, or thereupon suspends his wares, does so in order to attract custom, and thereby increase the profit derived from the use of the demised premises. The outer wall is therefore to him a source of legitimate profit. And, as the lessor does not ordinarily prescribe the uses to which the interior of the store shall be devoted—provided only the use be not offensive, improper, or illegal—so he may not, otherwise than with the same proviso, prescribe the uses to which the outer walls may be devoted by his lessee. If the lessee deems it more advantageous to employ the walls for advertising the goods or the business of others, receiving payment therefor, than to advertise or expose his own goods upon the wall, it is none of the landlord's business, unless he has restricted and forbidden such use of the premises, or inserted in his lease a covenant against the sub-letting of them.

It would be singular if a landlord, who had leased a building for the purposes of trade, might occupy the outer walls of the same building for displaying the advertisements of a rival trader ; but this result might very probably follow, if the lessee might not control the use of the exterior walls.

It appears from the case that the lease, by its terms, granted the right to the lessee to occupy a portion of the very space which the lessor now claims the right to control, by putting a window there—a use quite incompatible with the lessor's claim to exclude the defendant entirely from its occupation. It appears, also, that a prior tenant permitted the lessor to occupy the outer wall for posting placards, without objection ; but the fact that Mr. Dunlap did not choose to avail himself of all his

rights or advantages, is not a circumstance which can affect the present lessee. Nor can the present lessee be concluded by knowledge that Mr. Dunlap acquiesced either in an infringement by the landlord of his rights as a lessee, nor the fact that he may have occupied the premises upon different terms and considerations affect the question now before us. The defendant hired the premises with their usual and ordinary incidents, without limitation or reservation ; and he is entitled to make such use of them as, being consistent with the purposes for which they were demised, shall at the same time be neither injurious to the lessor nor offensive to the public.

With these views, and in accordance with the provisions of the case, there must be                                    *Judgment for the defendants.*