### 7509

### NATIONAL LIGHT AND THORIUM CO. v. ALEXANDER.

SPECIFIC PERFORMANCE.—Where the contract is to execute a deed if
grantor can remove a mortgage lien on the lands, if not then to
execute a lease for a specified time, if grantor cannot remove the
mortgage lien, specific performance should be decreed of the execu-
tion of the lease.

Before SHIPP, J., Greenville, April, 1909.    Reversed.

Action by National Light and Thorium Co. against J.
E. Alexander.    From decree in favor of plaintiff, defend-
ant appeals.

*Mr. J. J. McSwain,* for appellant.

*Messrs. Sirrine & Charles,* contra.

March 18, 1910.    The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE JONES.    This case was instituted in
March, 1906, for specific performance of contract.    On a
former appeal, 80 S. C., 10, 61 S. E., 214, this Court held
that specific performance was an appropriate remedy in

this case. The contract in question is set out in full in the former opinion. The contract contained a stipulation by defendant to sell "by good and sufficient deed with the usual covenants and warranty, free of all encumbrances, the mineral, and mineral rights of his land (described) for the sum of seventy-five dollars."

The other party agreed to buy the mineral and mining rights, and pay for same upon delivery of said deed and the proper release of said mineral rights from the lien of the mortgage now outstanding against the land. The contract further stipulated, "But in the event of the said Alexander being unable to secure the release of the mortgage lien on the said mineral and mineral rights, then he agrees to lease the said rights to the said English for the term of ten years, and accept in full payment for the said rights a royalty of fifteen dollars per ton of pure monazite removed from said land, the said land recently mined being in that event subject to the same royalty."

The said English agreed "to lease said mineral and mining rights on the above terms, and to pay the said royalties in the event of said Alexander being unable to secure the release of the said mortgage lien."

The complaint alleges among other things: "After the execution of the said contract, a reasonable time having elapsed, and plaintiff having mined and paid for considerable monazite under said contract, the defendant was asked by the plaintiff to execute a formal deed according to his agreement. He claimed that he was unable to secure a release of the mortgage lien on the premises, and, therefore, could not execute the deed. Plaintiff then demanded a lease and offered to pay the royalties according to the terms of said contract, but defendant likewise again refused, and afterwards refused, and still refuses to allow plaintiff or its agents to go upon said lands and mine the sand as plaintiff had a right to do.

"Defendant has proceeded to mine and gather monazite from the said land, and plaintiff is informed and believes that he now has in his possession approximately four thousand pounds of monazite sand belonging to plaintiff which he is offering for sale, all of which is contrary to the terms of the said lease and a violation of the right of the plaintiff thereunder."

There is no allegation and no evidence that plaintiff is able to remove the mortgage, and wilfully or capriciously refuses to do so ; on the contrary, the complaint alleges that defendant has no sufficient resources to answer a judgment at law for damages sustained by plaintiff, which is consistent with the alleged claim of defendant that he is unable to remove the mortgage.

Judge Shipp, in his decree for specific performance, required that defendant should execute a deed, the terms of which are set out in the case, conveying to plaintiff "all the minerals, mineral interest and mining rights on, in and upon all that piece, parcel, or lot of land (described) together with the rights of ingress and egress for the purpose of taking, mining and gathering said minerals, and protecting and exercising said mining interests and mining rights, and carrying on mining operations, together with the exclusive water rights on said premises, for the purpose of mining, with power and authority to make dams and ditches, and it may do any and all things whatever requisite and necessary for the recovery and removal of minerals found on said land, hereby releasing said company from such damages as are reasonably incident to said work." The deed further contained the *habendum* clause to have and to hold to the plaintiff, its successors and assigns forever, and also full covenants of warranty.

From the foregoing, it is apparent that the Circuit Court was in error in decreeing specific performance by deed of conveyance instead of by lease, as provided alternatively in the contract, in the event the defendant was unable to

remove the mortgage lien.  Defendant being unable to remove the mortgage can only be compelled to specifically perform by executing a lease.  As shown in the former opinion, in the event of the lease, the lessee should conduct and execute the mining operations with reasonable diligence and within a reasonable time, a matter in which the proposed deed is unlimited.

The ordinary method of mining monazite is thus described in the record.  Monazite is found in gravel in beds of streams and adjoining the bottom lands under the top soil. The top soil has to be removed, and after exposing the gravel by removing the top soil, the gravel is shoveled onto a perforated steel plate, and water is turned on it, so as to work the smaller material into a trough and the heavier gravel and rocks are shoveled out and thrown aside.  A higher percentage of monazite is obtained by washing several times.

It thus appears that the right to mine monazite involves such water rights as are reasonably necessary for the conduct of such mining operation.

The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings in conformity with the views herein announced.