**GUFFEY et al. v. STROUD.**
**(No. 1039—5078.)**

Commission of Appeals of Texas, Section B.
May 1, 1929.

528

L. W. Shepperd, J. E. & B. L. Bradley, and Mr. & Mrs. C. S. Bradley, all of Groesbeck, for appellants.

Ira Lawley, of Groesbeck, Robert M. Lyles, of Del Rio, and Black & Graves, of Austin, for appellee.

SPEER, J.  J. R. Stroud owned a valid gas lease on a certain 100-acre tract of land in Limestone county known as the Welch tract. Ira L. Guffey and De Armand Bros. afterward acquired a valid oil lease on the same land. Guffey and his associates drilled a well on the land, which well did not produce oil but did produce gas in large quantities. Stroud, claiming that the defendants were using and wasting gas from the well, filed suit for an injunction and in the alternative for a receiver to conserve the gas produced. The defendants answered that the plaintiff's lease was void and that he should be enjoined from further interfering with them in the control of their well and in the alternative for an equitable adjustment of the rights of the parties and specially that they be compensated for drilling the well and developing the gas under principles of equity. The trial court found that the defendants had expended in drilling the well the sum of $23,134.50 and that they were equitably entitled to be reimbursed to the extent of one-half of that sum, for which he gave judgment after allowing a credit for $420, the value of gas used by them from the well. Upon appeal by plaintiff the Court of Civil Appeals reversed the judgment and remanded the cause. 3 S.W.(2d) 592.

The opinion by Chief Justice Gallagher for the Court of Civil Appeals is, we think, an admirable disposition of the case. Little can be added to the points discussed by him. The gist of the opinion is embodied in the following excerpt: "Their first proposition is, in substance, that their situation is analogous to the situation of a joint owner of land who, without the consent or co-operation of another joint owner, discovers oil on such land and produces and sells the same. Their second proposition is, in substance, that their situation is analogous to the situation of one who in good faith discovers, produces, and sells oil from land which he believed at the time to be his own, but which in fact belonged to another, when called to account to the owner for the oil so produced and sold. The third proposition is, in substance, that since appellant, by the filing of this suit invoked the aid of a court of equity to restrain them from using or wasting said gas, he is in turn required 'to do equity' by allowing them to be fully compensated for all sums expended by drilling and equipping said well out of the sale of gas produced thereby."

These respective contentions were overruled, and we think justly so.

Undoubtedly Guffey and his associates had the right to drill the land in their quest for oil. The right to take the oil carried with it by implication the right to tap the gas pockets and to bring to the surface so much of the gas as was necessary in the proper drilling for oil. The grant of the oil carried with it a grant of the way, surface, soil, water, gas, and the like essential to the enjoyment of the actual grant of the oil. It cannot be said that all use of, or interference with, the gas in place was wrongful as against defendant in error. The rule in Shylock's case is not controlling. Portia's judgment and the playwright's English have given us a beautiful story, but its law is vicious. The bond for a pound of flesh, if valid, did carry with it by necessary implication of law as much Christian blood as was necessary to be shed in the operation. But the well having been a failure as an oil well, plaintiffs in error have no right to use it as a means, or permit it as an occasion, for the taking of defendant in error's gas. Defendant in error, never having contracted for the drilling of the well and indeed never having the power or right to prevent it, cannot be held liable for its cost upon either the principle of implied contract or estoppel. The only possible theory upon which he could be held for such expense is that of the equity which would arise from appropriating the services and expenditures of plaintiffs in error in mining his gas. Evidently it was to review this feature of the case the writ of error was granted.

Defendant in error has never, by any overt act, accepted the well or in any wise appropriated it to his own use so as to imply a promise to pay for it or to obligate himself upon any principle of equity to do so unless the suit filed in this case is of such a nature as to have that effect. His petition, after setting forth the facts hereinbefore shown, alleges that he is the sole owner of all the gas in and under the land, and that the defendants were taking the gas therefrom in violation of his rights, and that he is entitled to a writ of injunction restraining them "from entering upon said land and from taking therefrom the gas in and under same and from interfering in any way with the gas in and under said land, and that upon final trial said injunction be made permanent." In the alternative he prays for the appointment of a receiver during the pendency of this cause "to take charge of the land and gas and all equipment connected therewith and for general and special relief in law and equity." It will be observed that the only final judgment sought in the case was one of injunction for the protection of the exclusive right of the plaintiff to take or use the gas, the prayer for a receiver being in the alternative only in the event the temporary restraining order was denied. Under no construction can the suit be inter-

preted as an appropriation of the gas well or as an expression of willingness to accept it or use it. Upon the plainest principles of justice, if defendant in error should appropriate the labor and expenditure of plaintiffs in error in thus developing the gas, he would be bound both in law and equity to pay them the reasonable value of their services and improvements, and that, too, we think, unconditionally and not necessarily or at all, to be contingent upon future production. But in seeking the relief he has sought in this case, he is clearly within his legal and equitable rights. In asking that plaintiffs in error be enjoined from interfering with gas that properly belongs exclusively to him, he is asking no more than his plain and just legal rights. He is seeking no advantage or profit, or affirmative relief, and therefore cannot be said to come into court with unclean hands.

The plaintiff below very carefully limited his prayer for the appointment of a receiver to the alternative that the court should refuse his prayer for a writ of injunction. It is well settled that this method of seeking relief is allowable. It is not an election to appropriate the defendant's service and material upon equitable principles, but is an express election enjoining him from appropriating or wasting plaintiff's gas—a thing he has a clear right to do. To compel en equitable settlement between the parties would be to elect for the plaintiff, where he has, and has exercised, the right to elect for himself. For the principles of equity to apply the plaintiff must in some way have elected to appropriate the defendant's well. This he has not done.

Moreover, the court did not, at any time, grant the plaintiff's prayer for the appointment of a receiver to any extent. On the contrary, the receiver was appointed upon the petition of the defendants, subsequently presented, and upon their pleadings expressly denying the plaintiff's right to the gas; the contention being that his gas lease was void. So that the operation of the well by the receiver cannot, in any sense, be said to be the assertion of a claim to its use by defendant in error, but rather to the claim of plaintiffs in error to the exclusive right to the gas produced therein. If upon final termination of the receivership defendant in error receives the production of the well and to this extent the benefit of plaintiffs in error's labor and materials, it is so because of no voluntary act on his part seeking to appropriate the same, but is the result of plaintiffs in error's wrongful insistence that they owned the well and were entitled to appropriate the gas produced therefrom. This is not such conduct on the part of defendant in error as would in equity raise any just claim on the part of defendants in error to compensation for the well.

It is the plaintiffs in error's right upon abandoning their drilling for oil to draw their casing and remove their equipment from the ground and it would be their duty to so plug the well as to prevent the escape and waste of defendant in error's gas and otherwise remove the danger of the hole becoming a menace to the owner of the fee. What would be the subsequent rights of the defendant in error to open the well and take the gas, or the right of plaintiffs in error to so plug the well as permanently to destroy it, are questions not before us for decision.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The opinion of the Commission of Appeals is adopted and the judgment of the Court of Civil Appeals affirmed.