STRADLEY et al. v. MAGNOLIA PETRO-
LEUM CO. et al.

No. 5332.

Court of Civil Appeals of Texas. Amarillo.

Sept. 29, 1941.

Rehearing Denied Nov. 3, 1941.

Umphres & Umphres, of Amarillo, and
K. H. Dally, of Borger, for appellants.

Walace Hawkins and Earl A. Brown,
both of Dallas, and Morgan, Culton, Mor-
gan & Britain, of Amarillo, for appellee
Magnolia Petroleum Co.

Underwood, Johnson, Dooley & Wilson,
of Amarillo, for appellee Southwest Oil &
Development Co.

JACKSON, Chief Justice.

On March 6, 1931 the Southwest Oil and
Development Company, a foreign corpora-
tion, granted, sold and conveyed to Wilbur
C. Hawk Section 24, Certificate 110, issued
to the Day Land and Cattle Company,
patented to P. J. Lawless, containing 387.83
acres of land situated in Hutchinson Coun-
ty, Texas. This deed conveyed the surface
rights and contained a reservation or ex-
ception expressed in the following lan-
guage: "But all of the minerals in and
under and that may be produced from said
land and all mineral rights in and to said
land and full rights of ingress and egress
in and to and from and over said land for
the purpose of prospecting for, developing,
producing, transporting, and storing any
and all minerals and mineral products that
may be produced from said land are hereby
excepted from this conveyance and re-

served unto the grantor herein, it not being intended that any minerals or mineral rights either present or prospective in or to said land shall pass to the grantee hereby."

On April 28, 1931 Wilbur C. Hawk and wife, Hallie Hawk, conveyed said section of land to Alice A. Stradley by a proper deed which contained the same exception and reservation expressed in the identical language found in the deed from the Southwest Oil and Development Company to Wilbur C. Hawk.

On July 12, 1934 the Southwest Oil and Development Company leased and let to the Magnolia Petroleum Company for a period of ten years said Section 24 for the purpose of investigating, exploring, prospecting, drilling, mining and operating for and producing oil and gas and all other minerals, laying pipe lines, storing oil, building tanks, power stations, telephone lines and other structures to produce, save and take care of, treat, store and transport said minerals and other products obtained from said section and for the housing and otherwise caring for its employees. The lessor retained the usual and customary royalty, provided for delay rentals of $1 per acre in lieu of drilling operations. The Magnolia Company payed the delay rentals until December, 1937 when it entered upon the section under its lease and began operation for the development of oil and gas by drilling a water well to supply the necessary water for drilling oil wells. It obtained water and shortly thereafter began and prosecuted a continuous program of development and on or about October 8, 1940 it had ten producing oil wells on said section of land. The wells were pumpers and to facilitate the production of oil the company constructed a power station on the land with rod lines extending to each well in order to pump the oil from said well. It also constructed storage tanks to use in storing the oil pumped, together with the necessary pipe lines for handling such oil.

On October 17, 1939 Alice A. Stradley and her husband, W. B. Stradley, hereinafter called appellants, instituted this suit in the District Court of Hutchinson County, Texas, against the Magnolia Petroleum Company, hereinafter called the Magnolia, and the Southwest Oil & Development Company, hereinafter called the Southwest, and who are the appellees, to recover title and possession to said section of land together with the improvements placed thereon, to remove the alleged cloud cast on their title by the lease executed to the Magnolia by the Southwest, to recover the rental value of the use of the land by the appellees, to recover damages for the water which they claimed was a part of the land and covered by the conveyance to them and which they asserted had been converted by the appellees for use in drilling wells and the development of the oil on the land. They also sought an injunction to restrain the appellees from appropriating water obtained from the well and also from using the property as they had been doing theretofore and sought to recover actual and exemplary damages against the appellees as trespassers. They pleaded the purchase of the land from the Southwest by Wilbur C. Hawk, the reservation and exception in his deed to the oil and gas and mineral rights, the deed from Wilbur C. Hawk to Alice A. Stradley with the same reservations and exceptions and the mineral lease from the Southwest to the Magnolia. They asserted, however, that the reservation in the deeds did not include any of the rights not covered therein and did not reserve to the lessor or lessee the right to use any part of the land for any purpose or to any extent not necessary to protect the lessor and lessee in the minerals and mineral rights and in ingress and egress to the property so as to allow such lessor or lessee the full enjoyment of the mineral rights covered by the reservation and conveyed by the lease, but asserted that such exception did not reserve the water which they claim is not a mineral.

The Magnolia answered by general demurrer, special exceptions, general denial; set up the reservations in the deeds by and under which appellants held the surface rights but alleged that such reservations reserved to the Southwest the title to the minerals and mineral rights in the land, authorized it to execute the oil and gas lease to the Magnolia for the purpose of investigating, prospecting and developing the oil and that the surface of the land was acquired by appellants with both constructive and actual knowledge that the Southwest reserved the right to cause the development of its minerals by the usual and customary methods.

The Southwest adopted the demurrers and exceptions of the Magnolia, pleaded a general denial, asserted that it was the owner of the entire Section 24 when it

deeded it to Wilbur C. Hawk, by which instrument it conveyed only the surface rights in the land; pleaded the reservation and exception and the effect thereof.

At the close of the testimony the jury in obedience to a peremptory instruction from the court returned a verdict in favor of the Southwest.

In response to the one issue submitted by the court the jury found that the Magnolia used and occupied six acres more of the surface of the land than was reasonably necessary for its full enjoyment of the minerals in and under said section 24 and that the value of the use of said six acres of land was the sum of $30.

On these findings the court rendered judgment for the Southwest Oil & Development Company and that the appellants, Alice A. Stradley and her husband, W. B. Stradley, have and recover of and from the Magnolia Petroleum Company the sum of $30 with interest thereon from October 18, 1940 at the rate of 6% per annum together with their cost, and this judgment is before us for review.

The Southwest Oil & Development Company is the common source of title.

■ We consider it advisable to state at the beginning a few settled principles of law. Oil or gas in place is real estate and the ownership thereof may be severed from the ownership of the surface, Stephens County et al. v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566. The minerals may be severed from the surface by a reservation in a deed, Holloway's Unknown Heirs et al. v. Whatley et al., 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843, and the mineral estate may be severed and conveyed by a lease thereof.. Elder v. Miller et al., Tex.Civ. App., 116 S.W.2d 1171.

■ In our opinion the contentions of appellants relative to their right to recover title and possession of the land involved with the improvements placed thereon by the Magnolia and the right to remove the alleged cloud upon their title are not tenable. There is no claim that appellants were innocent purchasers. It is conceded that they had both constructive and actual knowledge of the reservations in the deeds through which they deraign their title. The property conveyed to Alice A. Stradley was the community property of herself and husband, W. B. Stradley. They admit in their pleading that the exception in the deed reserved to the Southwest the minerals and mineral rights together with the right of ingress and egress in order that the owner of the mineral rights might have full enjoyment of the property.

In 14 Tex.Jur. 963, para. 179, the author says: "The rule that a grant carries with it by implication whatever is necessarily incidental to enjoyment of the estate conveyed, applies to a reservation. Thus the reservation of a right to occupy land carries with it all rights necessary to the proper and lawful exercise of the right of occupancy."

■ In 26 C.J.S., Deeds, p. 386, § 106, the author relative to what is implied in a grant states the rule as follows: "It is a general rule that upon the conveyance of property the law implies a grant of all the incidents rightfully belonging to it at the time of conveyance and which are essential to the full and perfect enjoyment of the property."

In the same volume, page 461, § 140, subd. 6, in stating what passes by implications in a reservation the author says: "A reservation in a deed of a right or privilege should be construed in the same way as a grant by the owner of the soil of a similar right or privilege."

The reservation expressly retains the right of ingress and egress upon the land to prospect for, develop, produce, transport and store all minerals and mineral products that are produced. Prospecting for oil requires the drilling of a well and if oil is discovered the development of the land requires drilling more wells. The drilling of wells necessitates the use of water. Producing oil from a well that does not flow necessitates pumping. Pumping requires adequate machinery for raising the oil to the surface. Transporting requires pipe lines and storing requires tanks in which to place the oil. We think the exception or reservation with the legal implications therein amply sustains the action of the court in refusing appellants a recovery on their action in trespass to try title and in denying them a judgment removing the alleged cloud on their title to the surface of the section.

There is nothing in the record that indicates that the Magnolia acted wrongfully or maliciously in entering upon and developing their mineral lease covering the section, hence, there was no issue of exemplary damages. The record fails to dis-

close that the Southwest drilled the water well, used any of the water, erected any improvements on the surface of the land or entered upon or occupied the land for any purpose after the lease to the Magnolia and a peremptory instruction in its favor was authorized.

The appellants urge as error the action of the court in sustaining appellees' exception levelled at the sufficiency of the allegations in their petition to authorize a recovery for the asserted appropriation and conversion by the appellees of water from the land, claiming that in their deed the water was granted to appellants since it was not a mineral.

We deem it unnecessary to state in detail the allegations of appellants to which the exception was sustained since if water is a mineral or if Southwest by virtue of the reservation retained by implication the use of the necessary amount thereof to develop the mineral rights the court was warranted in sustaining the exception.

The testimony shows that the Magnolia went upon the land and drilled a water well for the purpose of securing water to drill an oil well, prospect for and develop its mineral rights. They obtained the water from this well which they used in drilling and operating for oil on the lease. It is not claimed that any of the water was used for development purposes on any other land or that water is not necessary to drilling oil wells and developing an oil lease.

In Guffey et al. v. Stroud, Tex.Com.App., 16 S.W.2d 527, 528, 64 A.L.R. 730, J. R. Stroud owned the gas on and under a certain tract of land in Limestone County but did not have any interest in the oil. Ira L. Guffey and De Armand Bros. owned the oil on and under the same tract of land but had no interest in the gas. Guffey and his associates drilled a well for oil but discovered none, however, the well produced gas in large quantities. Stroud instituted suit against Guffey and his associates to recover, among other things, for the gas used in drilling the well for oil. In passing upon the implied rights of the owner of the oil to the use of gas in drilling the well the Commission of Appeals, speaking through Judge Speer, says: "Undoubtedly Guffey and his associates had the right to drill the land in their quest for oil. The right to take the oil carried with it by implication the right to tap the gas pockets and to bring to the surface so much of the gas as was necessary in the proper drilling for oil. The grant of the oil carried with it a grant of the way, surface, soil, water, gas, and the like essential to the enjoyment of the actual grant of the oil."

It is unnecessary for us to determine whether water is a mineral since we believe that the reservation in the deeds by implication retained to the Southwest the right to use the amount of water from the land reasonably necessary to enable it to develop the mineral rights; this it sold and transferred to the Magnolia. Undoubtedly if Guffey and his associates in the Guffey-Stroud case, supra, were authorized under an oil lease to tap gas pockets and bring to the surface so much of the gas as was necessary for use in drilling an oil well the Magnolia had the right to use the amount of water reasonably necessary for the development and enjoyment of the oil discovered on its lease.

In National Light & Thorium Co. v. Alexander, 85 S.C. 306, 67 S.E. 310, 311, the Supreme Court of South Carolina, where there was no expressed grant therefor, says: "The right to mine monazite involves such water rights as are reasonably necessary for the conduct of such mining operation."

In Wardell v. Watson, 93 Mo. 107, 5 S.W. 605, the Supreme Court of Missouri holds that the right to mine land carries with it the incidental right to make a pond on the surface of the land to gather water to be used in running machinery. The same principle is announced in Hougan v. Milwaukee & St. Paul Railroad Company, 35 Iowa 558, 14 Am.Rep. 502; Riddle v. Littlefield, 53 N.H. 503, 16 Am.Rep. 388; and in Stonegap Colliery Company v. Kelly & Vicars, 115 Va. 390, 79 S.E. 341, 48 L.R.A.,N.S., 883. In the note following the last above cited authority the general rule seems to be that a person who owns the minerals in certain land has as incidental to his ownership the rights and privileges that are necessary for the profitable production of such minerals, and in determining his rights the courts take into consideration the circumstances, the right conveyed, the purpose for which it was conveyed and the information of the grantor and grantee in order to ascertain the intention of the parties.

What we have said disposes of all the errors assigned.

The judgment is affirmed.