J. M. MILLER et ux., Appellants,

v.

CROWN CENTRAL PETROLEUM COR-
PORATION et al., Appellees.

No. 3357.

Court of Civil Appeals of Texas.
Eastland.

Jan. 24, 1958.

Rehearing Denied Feb. 14, 1958.

Adkins & Condron, Haskell, for appel-
lants.

Ratliff & Ratliff, Haskell, for appellees.

GRISSOM, Chief Justice.

The appellees assert right in this case under oil and gas leases on two adjoining tracts executed before J. M. Miller and wife purchased the surface only of said tracts. Oil was produced from said land and adjacent tracts which comprise the Sojourner Field. After wells on the Miller land and throughout said field had produced oil for a few years, production declined sharply and it became necessary, in order to recover the maximum amount of oil, to institute a water flooding program for said field. This was done by agreement of all the owners of minerals and royalty, including the lessors and lessees of the two tracts in which the Millers own the surface. The water flooding program was approved by the Railroad Commission and it is being operated under its rules and regulations. To produce the maximum amount of oil it was necessary to pipe salt water across Millers' land and put it in a well on another tarct included in the program. Without Millers' permission appellees buried a pipeline three feet beneath the surface and have been and will continue transporting salt water across Millers' land. The Millers sued the oil and gas lessee and all persons who participated in such action. They sought a permanent injunction prohibiting the piping of salt water across their land and damages. In a trial to the court the injunction was denied but the Millers were awarded $100 damages. The Millers have appealed.

The Millers contend the court erred in not enjoining appellees from piping salt water across their land. Appellees say the court erred in awarding the Millers any damage. The Millers own only the surface. Their title to the surface was acquired after execution of the oil and gas leases and with both actual and constructive knowledge of the rights of the owners of the minerals and royalties. Under such circumstances the mineral and royalty owners hold the dominant estate and have the right to use as much of Millers' surface and to use it in such manner as is reasonably necessary to effectuate the purposes of said leases. Although appellees own the dominant estate, they must exercise their rights with due regard for the rights of the surface owner and without negligence. Weaver v. Reed, Tex.Civ.App., 303 S.W.2d 808; Placid Oil Co. v. Lee, Tex.Civ.App., 243 S.W.2d 860. Because the leases did not specifically grant the right to conduct the water flooding program, appellants say that the fact that the minerals were leased is immaterial. This cannot be true. See Joyner v. R. H. Dearing & Sons, Tex.Civ. App., 134 S.W.2d 757 (Writ Dis.). The leases specifically granted the lessee the right to drill and lay pipelines and other structures to produce, save, take care of, treat, transport and own oil. Each lease provided:

"Lessee, at his option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said premises in compliance with the spacing rules of the Railroad Commission of Texas or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of the oil and gas in and under and that may be produced from said premises * * *."

\* \* \* \* \* \*

"*The entire acreage so pooled* into a tract or unit *shall be treated,* for all purposes except the payment of royalties on production from the pooled unit, *as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease,* whether the well or wells be located on the premises covered by this lease or not." (Italics ours.)

The leases required the lessee to reasonably develop the leased premises. In the

absence of a provision to the contrary, such a lease carries with it the implied covenant of the lessee to use diligence in the production of oil and grants the right to use any means reasonably necessary to accomplish that end. In Livingston Oil Corp. v. Waggoner, Tex.Civ.App., 293 S.W. 903 (Writ Ref.), it was held that it was incumbent upon the lessee to produce all the oil possible and to use every reasonable means to do so. In Stradley v. Magnolia Petroleum Co., Tex.Civ.App., 155 S.W.2d 649 (Writ. Ref.), the mineral and surface estates had been severed. It was held that the lessee of the mineral owner had the right to use as much of the surface as was necessary for drilling and producing oil. The court said that the rule is that the person, who owns the minerals in the land, has, incidental to such ownership, all the rights necessary for the profitable production of minerals and that in determining such rights the court should take into consideration the purposes for which the lease was executed. The actions of the Railroad Commission were quasi judicial. Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961, 967.

■ It was agreed that injection of water into the sand at the input wells on the Fields tract, to which salt water is being transported across Millers' land, had increased the recovery of oil from the two Miller tracts and from the entire Sojourner Field and will continue to do so. It was also agreed that the most direct route and the shortest distance from the place where the salt water was obtained to the input well on the Field tract is across Millers' land. In Guffey v. Stroud, 16 S.W.2d 527, 528, 64 A.L.R. 730, our Supreme Court held that the right to take oil carried with it the right to tap gas pockets, the gas being owned by a different lessee, and bring to the surface so much gas as was necessary to drill for oil; that a grant of the oil carried with it a grant of the way, surface, soil, water, gas and the like, essential to enjoyment of the grant of oil. In Oil and Gas Law from the Texas Law Review, page 1164, and 24 Texas Law Review 471,

Hon. Raymond M. Myers and Hon. Earl A. Brown said:

"The ordinary pooling clause in an oil and gas lease reads in part as follows:

" 'Lessee is hereby granted the right to pool or unitize this lease, the land covered by it or any part thereof, with any other land, lease, leases, mineral estates or parts thereof, for the production of oil, gas or any other minerals.'

*"It is evident that this clause is sufficiently broad in its scope to include pooling or unitization for water flooding purposes."* (Italics ours.)

The same authors say:

" * * * it may be assumed that the right to water flood, as an efficient producing method, exists under the terms of the usual oil and gas lease whether or not any specific mention thereof is made in the lease." See also Wemple v. Producers Oil Co., 83 So. 232, 237; Livingston Oil Corp. v. Waggoner, supra.

The heretofore quoted provisions of the leases on the Miller land more clearly granted the right to pool said land for water flooding purposes than did the provision quoted above. They expressly provided that, when pooled, the entire unit should be treated as if it were included in "this lease". Of course, no one would argue that the lessee did not have the right to lay pipelines or pipe said water across Millers' land for the purpose of producing oil from wells on Millers' land. More oil is being produced from Millers' land as a result of piping the salt water across it. The lessee is certainly not deprived of the right to do so merely because it also has the effect of producing more oil from other tracts not included in the leases of Millers' tracts but included in said unit. The leases expressly granted lessee the right to pool the two Miller tracts with other land and that production on the pooled acreage should be treated as if it were production

from the land covered by leases on the Miller tracts. Under the decision in Guffey v. Stroud, supra, the lease granted "the way, surface, soil, water, gas and the like essential to the enjoyment of the actual grant of the oil." Under said decision and the view expressed by Myers and Brown, the leases granted the lessee the right to pool the Miller tracts with other land and expressly provided that production from such a unit should be "treated as if production is had from this lease". The court correctly refused to grant the injunction.

Since appellees had the right to pipe salt water across said land, they are not liable to the Millers for damages unless they either took more of the Millers' surface than was reasonably necessary for carrying out the purposes of the leases, were negligent, or intentionally injured them. Since it is not contended that appellees did any of these things, the judgment for damages was not authorized. The judgment for damages is reversed and the judgment is rendered for appellees. In all other respects the judgment is affirmed. Affirmed in part and reversed and rendered in part.