**B. L. McFARLAND DRILLING CONTRACTOR, Appellant,**

v.

**W. N. CONNELL, Appellee.**

No. 5443.

Court of Civil Appeals of Texas.
El Paso.
Feb. 15, 1961.

Rehearing Denied March 15, 1961.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr., Boyd Laughlin, Midland, for appellant.

Finley & Scogin, Kermit, for appellee.

LANGDON, Chief Justice.

W. N. Connell, appellee, sued B. L. McFarland Drilling Contractor, appellant, for willful and wrongful trespass in taking caliche from land upon which appellee had an undivided mineral interest in the entire surface estate, and upon which appellant had an oil and gas lease. Trial was had before the court without a jury, and judg-

ment was rendered that appellee did not have the right of free use of the caliche. Appellant filed notice of appeal and thereafter filed the proper appeal bond. Subsequently, appellee filed a release, stating that he had been satisfied and compensated and that, for a valuable consideration, he was releasing appellant from any further claims; and also filed a motion to dismiss the appeal on the ground that the questions involved herein were now moot.

Appellant refused to pay any part of the damages found by the trial court and insisted upon an appeal, bringing five points of error.

By Point 1, appellant contends that the appeal should not be dismissed because the judgment as now entered and executed, if unreversed, decides and determines substantial property rights of the parties under oil, gas and mineral leases being developed and operated by appellant, and that such questions and matters are in controversy between the parties and are not moot. By Point 2, appellant contends that all costs of appeal should be taxed against appellee, because appellee argued for and secured an erroneous judgment in the trial court and insisted upon a judgment fixing the substantive property rights of the parties while, at the same time, attempting to deliver a release of only the money damages.

■ It follows, since we have overruled appellee's motion to dismiss the appeal, it is our opinion that this appeal is not moot (Point 1), and that there is a substantial question that has been properly raised on this appeal: That is, can the holder of an oil and gas lease be the free user of caliche found on the lease, for development of the lease, or has such holder become a trespasser to the surface owner's rights to the surface when he uses such caliche on the leasehold premises and nowhere else? We do not consider this to be a moot question, in spite of the so-called release, and believe appellant still has a vital interest in the question raised. 5 C.J.S. Appeal and Error § 1354(1), p. 411; Speckels v. Kneip, Tex. Civ.App., 170 S.W.2d 255, at page 257;

Cravens v. Wilson, 48 Tex. 321; 3 Tex.Jur. 74.

With respect to appellant's second assignment of error, involving the taxing of costs, we believe this matter to be controlled by Rule 448, Vernon's Annotated Texas Rules of Civil Procedure, and it will be disposed of depending upon the final ruling in this case.

Appellant's third, fourth and fifth assignments of error attack the judgment of the trial court, holding that appellant was a trespasser in opening and taking the caliche from a pit on the west half of Section 37, and in using such caliche on roads and on drill and tank battery sites on the leased premises, and in holding that appellant was liable to appellee in damages for the market value for grazing purposes of the one acre of land used for the caliche pit, as well as for the market value of the caliche taken from the pit, and in rendering judgment that appellee recover from appellant damages for the depression in market value for grazing purposes of the one acre of land, and for the market value of the caliche taken and used by appellant on the leasehold premises, because appellant had the legal right to take and use such caliche under his oil, gas and mineral lease from the mineral owners.

In this cause, appellant has been adjudged a trespasser and has been held liable in damages because he opened a pit, excavated, and took caliche from land which was a part of the lands covered by appellant's oil and gas leasehold estate, without the consent of appellee, who owned all of the surface of said lands, and an undivided interest in part of the minerals thereunder.

Appellant McFarland had drilled four oil wells on the South half of Section 37, and the West half of Section 48, of the land involved in this controversy. The caliche was taken from a pit located in the South half of Section 37, and was used by appellant to build roads and pads for drill sites, and for tank batteries on the two half-sections under lease, and nowhere else.

It was stipulated that appellee, W. N. Connell, owned only a part of the minerals, subject to oil and gas leases, and that he owned the surface of the West half of Section 37 and all of Section 48; it was further stipulated that appellant McFarland owned and had oil and gas mineral leases from the various minerals owners (including the mineral interest owned by appellee), *some of which leases covered all of Sections 37 and 48 and additional lands,* and some covering only the South half of Section 37, and some covering the West half of Section 48.

Trial below was to the court without the intervention of a jury. The trial court did not file separately its findings of fact and conclusions of law, but did incorporate certain findings of fact in the judgment, some of which are material, and it is believed must control the disposition to be made of this case. These findings are paraphrased and set out below:

(1) Appellant drilled four wells on the leasehold premises and constructed roads thereon to give access to such wells and well sites for drilling and production purposes, including the location of two tank batteries thereon. The use of appellee's surface estate in said land for such purposes was reasonable and necessary, was authorized by the mineral leases, and appellant used no more of said land than was reasonably required for the drilling and production of oil from said land.

(2) Appellant opened a pit one acre in size and eight feet deep, from which he extracted 2,105 cubic yards of caliche which was used by appellant in constructing the roads and pads for drill sites and tank batteries. The pit from which the caliche was taken, as well as the roads and pads on which it was used, were all located on lands which were a part of the lands covered by the oil and gas mining leases in which appellant did, at all pertinent times, own a valid and subsisting interest.

(3) 2,105 cubic yards of caliche was the amount of caliche reasonably necessary to

construct appellant's roads and pads for drill sites and tank batteries.

(4) If defendant had the right to open the caliche pit under the terms of the various oil and gas mining leases its location was at the most advantageous and reasonable place for the building of roads and tank battery pads.

From the facts actually found, it would appear that such use as was made of the caliche by appellant was reasonable and necessary, and that no more of the caliche, and no more of the land, was used than was reasonably necessary for drilling and production operations.

It appears that the trial court based its judgment in this cause on its finding, as a matter of law, that the caliche taken by appellant was a mineral; therefore, not a part of the surface estate; that such mineral (caliche) was not included as one of the minerals granted, leased and let to the oil and gas lessees under the terms of the leases held by appellant on such land.

■ Whether caliche is, or is not, a mineral seems to us to be immaterial. In passing upon the implied rights of the owner of the oil to the free use of gas found on the leased premises for the drilling of wells for oil only, the Commission of Appeals, speaking through Judge Speer, in the case of Guffey et al. v. Stroud, 16 S.W.2d 527, 528, 64 A.L.R. 730 (opinion adopted by Supreme Court), said:

"Undoubtedly Guffey and his associates had the right to drill the land in their quest for oil. The right to take the oil carried with it by implication the right to tap the gas pockets and to bring to the surface so much of the gas as was necessary in the proper drilling for oil. The grant of the oil carried with it a grant of the way, surface, soil, water, gas and the like essential to the enjoyment of the actual grant of the oil."

Under the terms of the lease in the Guffey case above, Guffey owned only the oil

under a certain tract of land, and owned no interest in the gas. The gas estate was owned by another lessee, who owned no interest in the oil.

Mrs. Dora Connell was the common source of title to all the lands involved in this controversy. By deed dated January 9, 1935, she sold and conveyed an undivided one-half of all the oil, gas and other minerals in 3,931 acres of land, including all of Sections 37 and 48, to W. M. Holland, with the right of ingress and egress, without limitation or reservation. Appellee, W. N. Connell, knew of the prior sale of this interest in the minerals under the entire ranch when he became the owner of the surface of particular sections under the terms of Mrs. Connell's will.

A similar fact situation was presented in the case of Stradley v. Magnolia Petroleum Company, Tex.Civ.App., 155 S.W.2d 649 (writ refused). In that case, as here, there had been a severance of the minerals from the surface, by deed. Southwest Oil and Development Company had conveyed the property to Wilbur C. Hawk, reserving all of the minerals, with the right of ingress and egress for the purpose of developing the property. Thereafter, Hawk conveyed the land to Alice A. Stradley and, in the mean-time, Southwest Oil and Development Company (owner of the minerals by reservation), had leased the land to Magnolia Petroleum Company. Magnolia began operations for the development of oil and gas by drilling a water well to supply the necessary water for the drilling of oil wells, and the water from such wells was subsequently used in drilling ten wells, and in operating for oil on the lease. It was not claimed that the water was used for development purposes on any other lease, or that more water was used than was necessary or required in the conduct of such drilling operations. Mrs. Stradley and her husband sued to recover damages for the water which had been taken, and also sought an injunction to restrain Magnolia from appropriating the water in the future. The court held that Magnolia had the right to drill the water wells and take and use the water elsewhere on the premises for the drilling of oil wells. In passing on the case, the court cited Guffey et al. v. Stroud, supra, and held that Magnolia acquired the right to use the water (regardless of whether water be considered a mineral), from the owner of the minerals under the terms of the oil and gas leases.

In the Stradley case, the Amarillo court was simply following a long line of decisions adopting the rule first announced by the Supreme Court of Texas in the year 1916, in the case of Texas Company v. Daugherty et al., 107 Tex. 226, 176 S.W. 717, 718, L.R.A.1917F, 989, wherein it was held:

"For the purpose of making the exploration and producing all the oil, gas, and other minerals that might be within the ground, and the erection of all structures necessary thereto, as well as their storing and transportation, *the possession of the land itself is likewise granted, with no limitation upon the number of wells or shafts that the grantee might sink, or the extent of its operations in that connection, and consequently no qualification of its right of possession of all such parts of the surface,* except that no well should be drilled nearer than 200 feet from the house or barn on the premises without the consent of both parties, *as might be necessary to its full use by the grantee for the purposes named.*" (Emphasis supplied.)

Appellant McFarland, in the case at hand, was not charged with negligence in connection with either the taking or the using of the caliche from the pit opened by him on the leased premises, and used exclusively on said lease in connection with appellant's drilling and production operations. Negligence was not pleaded nor proved nor found by the trial court. On the contrary, the trial court itself found and declared, in the judgment, that the use of the caliche was reasonable and necessary, and that no more of the caliche and

no more of the land was used than reasonably necessary for the production operations. It simply held that caliche was a mineral, not included within the grant of minerals leased to appellant, and that appellant, therefore, had no right to appropriate the caliche to his own use.

In the face of the undisputed facts of this case, we believe such holding was error, and that it is in conflict with the cases already cited, as well as with the holdings in the following cases: Strayhorn v. Jones, 157 Tex. 136, 300 S.W.2d 623; Warren Petroleum Corp. v. Monzingo, 157 Tex. 479, 304 S.W.2d 362, 65 A.L.R.2d 1352; Alfrey v. Ellington, Tex.Civ.App., 285 S.W.2d 383 (err. ref. n. r. e.).

 Generally, upon the conveyance of property, the law implies a grant of all the incidents rightfully belonging to it at the time of the conveyance, and which are essential to the full and perfect enjoyment of the property. The mineral estate in land, under the law of this State, is recognized as the dominant estate, and as such, carries with it the right to burden the surface of the land in whatever manner may be reasonably necessary or essential to the full and perfect enjoyment of the mineral estate. Where no restrictions have been placed upon such rights in the grant of the mineral estate, it seems that the only limitation imposed upon the owner of the mineral estate in the exercise of his right to use the surface of the land for the development of the mineral estate is that such use must not be unreasonable.

Appellant's Points 3, 4, and 5 are sustained.

 The judgment of the trial court is reversed, and judgment is here rendered that appellee take nothing. All costs of this appeal are assessed against the appellee herein.

ABBOTT, Justice (dissenting).

I concur in the majority's disposition of appellant's Points 1 and 2, but respectfully dissent from its holdings by which appellant's Points 3, 4 and 5 were sustained and the judgment of the trial court reversed and rendered.

The facts in this case are set forth in the majority opinion and need not be stated here.

The third, fourth and fifth assignments of error will be discussed together. Appellant argues that it has the right to take caliche from the surface to use on roads, drilling sites and tank battery sites, under its oil, gas and mineral leases from the mineral owners. Appellant's claim is based upon the rights of the holder of an oil and gas lease to use so much of the surface as is reasonably necessary or essential to the enjoyment of the grant of the lease. There is no doubt, under the holdings of the Texas courts, that the holder of the oil and gas lease has the dominant estate and that said holder is entitled to use so much of the surface as is reasonably necessary. Stradley v. Magnolia Petroleum Co., Tex.Civ.App., 155 S.W.2d 649. The right of such use has been expanded by the courts to include a grant of way, surface, soil, water, gas and like essentials. Guffey et al. v. Stroud, Tex.Com.App., 16 S.W.2d 527, 64 A.L.R. 730. We have found no cases where the use of caliche has been the subject of such a suit. Caliche is not such a mineral as to come under the classification of a mineral in the oil, gas and mineral leases. Shell Petroleum Corp. v. Liberty Gravel & Sand Co., Tex.Civ.App., 128 S.W.2d 471; Psencik et al. v. Wessels et al., Tex.Civ.App., 205 S.W.2d 658; Heinatz v. Allen, 147 Tex. 512, 217 S.W.2d 994; Praeletorian Diamond Oil Ass'n v. Garvey et al., Tex.Civ.App., 15 S.W.2d 698; Winsett et al. v. Watson, Tex.Civ.App., 206 S.W.2d 656. The lease in question granted to the lessee the right and privilege of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals; laying pipe lines, building tanks, power stations, telephone lines and other structures upon the land covered by said lease; and the right to

produce, save, take care of, treat, transport; and own said products and housing its employees. Further, the "lessee shall have free use of oil, gas, coal, wood and water from said land." Appellee contends that where these specific, foregoing free uses of the surface for the benefit of the lessee are enumerated, any other uses are excluded under the doctrine of expressio unius est exclusio alterius. I believe this doctrine to be applied primarily to the construction of statutes, and not to a lease that necessarily contains numerous implied covenants (American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S.W. 1019); but I believe that the inclusion of such specific items may tend to show the intent of the parties.

In the present case, the testimony of appellant's production superintendent, who made the arrangements for the drilling, indicates clearly that he expected to pay, and did pay, for the use of the caliche. However, he did his dealing with a tenant who had no authority, knowing at the time that appellee was the record owner. There is also testimony to the effect that appellee subsequently sold caliche commercially from another pit on the same property, opened near the one in question. While it is true that appellant was entitled to so much of the surface as was reasonably necessary, I believe that use is applicable to such surface occupied by drilling rigs, tank batteries, roads for ingress and egress, slush pits and other necessary usages, but not to the free use of a marketable mineral (caliche, in this case) not contemplated by the lease. Appellee has a monetary interest in such caliche as may be found on his property, to produce himself or lease to some other person, as in Shell Petroleum Corporation v. Liberty Gravel and Sand Company supra; and, as held in that case, I believe that appellant here was a trespasser. Mountain States Tel. & Tel. Co. v. Vowell Construction Co., Tex.1961, 341 S.W.2d 148. The pit, consisting of about an acre of land, and to a depth of eight or ten feet, has destroyed the surface for the purpose which it had previously been used—that is, a grazing lease—thus justifying the damages found by the trial court.

To extend the uses to which the surface may be subjected beyond the present point, I believe would be an unwarranted invasion of those property rights remaining to the owner of the surface.

I would affirm the judgment of the trial court.