**DOUBLE M PETROPROPERTIES, INC., Appellant,**

v.

**James E. FRISBY, Appellee.**

No. 11–96–363–CV.

Court of Appeals of Texas, Eastland.

Nov. 6, 1997.

Gary L. Hacker, Whitten & Young, Abilene, for appellant.

Gary M. Brown, Dist. Atty., Anson, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

ARNOT, Chief Justice.

This is an appeal from an order granting a temporary injunction. We reverse and dissolve the injunction.

James E. Frisby owns the surface estate and a royalty interest in the mineral estate in the 438 acres involved in this suit. Double M Petroproperties, Inc., as a successor lessee to the oil, gas, and mineral lease, began in August of 1994 to inject saltwater into the Culbertson No. 2–5 well on the property. In July of 1996, Frisby sued Double M for damages arising from a saltwater spill; for a court determination of the acreage held by each of the three producing wells on the property; for conversion if the trial court determined that the lease had lapsed; for damages for the injection of saltwater produced off the lease premises; for a temporary restraining order; and for a temporary injunction. The trial court granted the temporary restraining order preventing Double M from injecting saltwater into the Culbertson No. 2–5 well. After a hearing, the trial court granted the temporary injunction barring the injection of any saltwater by Double M into the Culbertson No. 2–5 other than saltwater obtained from the other wells on the premises. The trial court also set a date for a trial on the merits.

Double M perfected this appeal from the order granting the temporary injunction. Therefore, the underlying legal issue of whether, absent express language in the oil, gas, and mineral lease, the mineral lessee as owner of the dominant estate has the implied right to transport and inject saltwater which is produced from lands other than the lease premises is not before this court at this time. See *TDC Engineering, Inc. v. Dunlap*, 686 S.W.2d 346 (Tex.App.—Eastland 1985, writ ref'd n.r.e.), and *Miller v. Crown Central Petroleum Corporation*, 309 S.W.2d 876 (Tex. Civ.App.—Eastland 1958, writ dism'd agr.).[1] The issue before this court is whether the trial court abused its discretion when it temporarily enjoined Double M from injecting

1. See also *Robinson v. Robbins Petroleum Corporation, Inc.*, 501 S.W.2d 865 (Tex.1973); *Sun Oil Company v. Whitaker*, 483 S.W.2d 808 (Tex. 1972); *Gulf Oil Corporation v. Walton*, 317 S.W.2d 260 (Tex.Civ.App.—El Paso 1958, no writ); *Stradley v. Magnolia Petroleum Co.*, 155 S.W.2d 649 (Tex.Civ.App.—Amarillo 1941, writ ref'd).

off-premise produced saltwater. See *Davis v. Huey*, 571 S.W.2d 859 (Tex.1978).

■ In a hearing for a temporary injunction, the trial court must decide whether the applicant is entitled to preservation of the status quo of the subject matter pending a final trial on the merits. *Davis v. Huey*, supra. Status quo is the last actual peaceable non-contested status that preceded the pending controversy. *State v. Southwestern Bell Telephone Company*, 526 S.W.2d 526 (Tex.1975). The only issues before the trial court are whether the applicant has presented some evidence establishing a probable right of recovery and that probable harm will occur if the injunction is not granted. *State v. Southwestern Bell Telephone Company*, supra; *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517 (1961); *Hartwell's Office World v. Systex Corporation*, 598 S.W.2d 636 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

■ It was undisputed at the hearing that Double M began injecting saltwater in August of 1994 into the Culbertson No. 2–5 after obtaining approval from the Texas Railroad Commission. It was further undisputed that most of the saltwater injected in the Culbertson No. 2–5 was produced "from other leases." Frisby testified that there had been a saltwater spill, that there was "a lot of standing water and salt all surrounding the tank" in a "20 to 30" foot circle, and that he was currently growing hay in the area. Kyle Markey, president of Double M, testified that the spill had been cleaned up and that the saltwater lines had been buried so as not to be dangerous to plows or to cattle.

The record does not establish that a temporary injunction is necessary to preserve the status quo or that, absent the temporary injunction, probable harm will occur. Double M's sole point of error contending that the trial court abused its discretion in granting the temporary injunction is sustained.

The order granting the temporary injunction is reversed, and the temporary injunction is dissolved.