# Supreme Court of Texas

No. 23-0676

Cactus Water Services, LLC,

*Petitioner*,

v.

COG Operating, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE BUSBY, joined by Justice Lehrmann and Justice Sullivan, concurring.

When a landowner has leased its "oil and gas" or "oil, gas, and other hydrocarbons," and those leases limit the lessee's right to use water, who owns groundwater that is mixed with oil when it is produced: the landowner or the lessee? I agree with the Court that "[u]nless expressly severed, subsurface water remains part of the surface estate subject to the mineral [lessee's] implied right to use the surface—including water—as reasonably necessary to produce and remove the minerals." *Ante* at 16. We have held for more than a century that the surface owner owns groundwater, which includes the percolating,

mineral-laden native water found in many subsurface strata.[1] The Water Code recognizes this ownership, TEX. WATER CODE §§ 36.001(5), 36.002(a); *see also* 30 TEX. ADMIN. CODE § 297.1(22), and our Constitution protects it against uncompensated takings by statute, rule, or other governmental action. *Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 823-838 (Tex. 2012).[2]

But absent language in the lease expressly addressing the matter, does the surface owner retain ownership of groundwater produced along with hydrocarbons after the lessee has separated out the hydrocarbons?

---

[1] *See, e.g.*, *Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 63 & n.43 (Tex. 2016); *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 101-02 (Tex. 1984); *City of Sherman v. Pub. Util. Comm'n of Tex.*, 643 S.W.2d 681, 686 (Tex. 1983); *Robinson v. Robbins Petroleum Co.*, 501 S.W.2d 865, 867 (Tex. 1973) (holding that although briny subsurface water might be produced "for the extraction and use of the mineral content" by a mineral lessee, the "water itself is an incident of surface ownership in the absence of specific conveyancing language to the contrary"); *Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 811 (Tex. 1972) ("Water, unsevered expressly by conveyance or reservation, has been held to be a part of the surface estate."); *City of Corpus Christi v. City of Pleasanton*, 276 S.W.2d 798, 802 (Tex. 1955); *Texas Co. v. Burkett*, 296 S.W. 273, 278 (Tex. 1927) ("[O]rdinary percolating waters . . . are the exclusive property of the owner of the surface of the soil."); *Houston & Tex. Cent. R.R. v. East*, 81 S.W. 279, 281 (Tex. 1904) (discussing cases applying rule that "the owner of land is the absolute owner of the soil and of percolating water, which is a part of, and not different from, the soil").

[2] These statutes and regulations do not alter common-law property rights. *See, e.g.*, *Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 26 (Tex. 1990). Such rights form the background against which courts evaluate any allegation that government action amounts to an unlawful taking. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160, 161 (2021); *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 27 (Tex. 2024). As we have recognized, government regulations can impose certain obligations or limitations on a property owner without going so far as to require compensation for a taking. *See Day*, 369 S.W.3d at 838-843.

Or was the burden of the produced water's disposal—and the consumption of any capital value—conveyed to the lessee as part of its lease of hydrocarbons? In answering these questions, it is not helpful to focus—as the court of appeals majority did—on whether fluids produced along with hydrocarbons are "water or . . . waste." 676 S.W.3d 733, 738 (Tex. App.—El Paso 2023). The answer, of course, is both: the fluids include groundwater originally belonging to the landowners, and they are also classified by statute and rule as oil-and-gas waste, which the lessee has a duty to handle and dispose of safely. *Ante* at 16, 19, 21. Instead, our focus must be on whether the landowners leased this groundwater to the lessee.

I agree with the Court that "incidentally produced" subsurface water "was included in the hydrocarbon conveyances." *Ante* at 21. We have long recognized that a "grant of the oil carried with it a grant of the . . . water . . . essential to the enjoyment of the actual grant of the oil." *Guffey v. Stroud*, 16 S.W.2d 527, 528 (Tex. [Comm'n Op.] 1929). As the Court explains, "the common and ordinary meaning of a grant of hydrocarbons includes the water incidentally produced with those substances at the mineral lessee's expense, which the lessee is required to properly dispose of free from third-party interference." *Ante* at 22.[3]

---

[3] I note that in the surface-water context, some Texas courts have adopted the analogous doctrine of "developed water." This doctrine grants a permittee that diverts water—at its own expense—the exclusive right to control that water and apply it to permissible uses, protecting that exclusive right against third-party interference. *See, e.g.*, *Guelker v. Hidalgo County Water Improvement Dist. No. 6*, 269 S.W.2d 551, 553 (Tex. App.—San Antonio 1954, writ ref'd n.r.e.); *Harrell v. F.H. Vahlsing, Inc.*, 248 S.W.2d 762, 768-770 (Tex. App.—San Antonio 1952, writ ref'd n.r.e.); *see also* Edmond R. McCarthy,

Because I agree with the Court on these two central points, I join its opinion. That opinion is a narrow one, and I write separately to make clear what we do *not* decide today.

*First*, the Court's holding is simply a default rule: "an oil-and-gas conveyance that does not expressly address the matter" conveys to the hydrocarbon lessee "possession and control over the disposition of liquid-waste byproduct," including "constituent water." *Ante* at 2, 3. The landowners and the hydrocarbon lessee "are free to strike a different deal" regarding ownership of groundwater produced with and then separated from hydrocarbons. *Id.* at 3. Importantly, none of the statutes or regulations the Court identifies prevent the parties from doing so, nor do they purport to divest the landowners of their groundwater ownership by operation of law.[4]

Jr., *Mixing Oil and Gas with Texas Water Law*, 44 TEX. TECH L. REV. 883, 889-890 (2012); Frank R. Booth, *Ownership of Developed Water: A Property Right Threatened*, 17 ST. MARY'S L.J. 1181, 1196 (1986).

[4] The Court observes that after these leases were made, the Legislature enacted and later amended Section 122.002 of the Natural Resources Code to create default rules for ownership of fluid oil-and-gas waste when a lease, contract, or other legally binding document does not provide otherwise. Fluid oil-and-gas waste is defined as "waste containing salt or other mineralized substances, brine, hydraulic fracturing fluid, flowback water, produced water, or other fluid that arises out of . . . production of oil or gas." TEX. NAT. RES. CODE § 122.001(2). Thus, the fluid addressed by the statute arises once the oil or gas is separated from it by the lessee or its agent. And the statute provides that ownership of this fluid changes hands not at this point of separation, but (absent contrary agreement) when it is used by or transferred to a person who takes possession of it for the purpose of treating it for a subsequent beneficial use. *Id.* § 122.002(1). Accordingly, the statute would not affect any agreement between a landowner and its hydrocarbon lessee regarding the landowner's continued ownership of the groundwater component of fluid oil-and-gas waste.

Of course, parties who strike such a deal would be well advised to agree upon a practical method for determining how much of the liquid-waste byproduct of production the landowner continues to own.[5] But we have been directed to no authority that would prevent a landowner who retains ownership of the water from obtaining any permits necessary to transport, treat, and sell or otherwise dispose of it, or from contracting with the lessee or a permitted third party to do so on its behalf.

***Second***, the Court does not break any new ground regarding ownership of unleased minerals or other substances that may be produced along with leased minerals. *Ante* at 3 n.3, 20 n.58. We have explained that the general intent of parties executing a lease of "all minerals" or "oil, gas, and other minerals" is to "convey all valuable [mineral] substances to the mineral owner"—that is, "all substances within the ordinary and natural meaning of th[e] word" mineral. *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 102 (Tex. 1984). But as the Court rightly points out, the conveyances here were only of "oil and gas" or "oil, gas, and other hydrocarbons." *Ante* at 17 n.44. Accordingly, no non-hydrocarbon minerals were leased. *See, e.g.*, *Myers-Woodward, LLC v. Underground Servs. Markham, LLC*, ___ S.W.3d ___, 2025 WL 1415892, at *6 (Tex. May 16, 2025) (holding lease of salt did not convey "ownership of non-salt substances or spaces adjacent to the salt"). Applying such leases, we have held that production of unleased minerals

---

[5] *See ante* at 12 n.29, 15 n.36; *cf. Humble Oil & Ref. Co. v. West*, 508 S.W.2d 812, 818-19 (Tex. 1974) (discussing lessee's burden when it injects non-native substances into stratum).

5

along with leased minerals does not transfer ownership of the unleased minerals to the lessee. *Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 25-27 & n.6 (Tex. 1990) (holding lease of only oil and casinghead gas did not convey ownership of other gas or liquids that became mixed with product stream during production); *Guffey*, 16 S.W.2d at 528-29 (holding that, where oil lessee drilled a well that produced gas and the same land was subject to a gas lease with a different entity, the oil lessee was not entitled to the gas produced from that well); *see* Maurice H. Merrill, The Law Relating to Covenants Implied in Oil and Gas Leases 197 (2d ed. 1940).[6]

***Third***, having held that the leases here include groundwater produced with hydrocarbons, the Court does not go on to address the mineral lessee's obligations to the landowners with respect to this leased groundwater. *Ante* at 20 n.58. And rightly so, as no claims between the landowners and lessee are presently before us. *Id.* at 12-13.

Thus, it is unclear whether the net financial result for those parties of holding that produced groundwater is leased will be much different from holding that it is not. For example, will the lessee owe royalties on the produced groundwater it leased? *Cf. Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 728 n.1 (Tex. 1981) (determining applicable royalty for unnamed substance). If not, how should the parties account for any profit or loss realized from beneficial reuse or disposal of the water? *Cf. French v. Occidental Permian Ltd.*, 440 S.W.3d 1, 8-10 (Tex.

---

[6] The Court also does not adopt the contrary theory advanced by COG and the court of appeals majority—that the lessee owns the entire "product stream." *Ante* at 20 n.58.

2014). And does the lessee owe any implied covenants with respect to management of the water given that the leases do not expressly address the issue? *See, e.g.*, *Cabot Corp. v. Brown*, 754 S.W.2d 104, 106 (Tex. 1987). These questions and more remain to be answered in future cases as a result of the Court's holding today. Our opinion should not be read to settle them.

With these observations, I join the opinion of the Court.

_____
J. Brett Busby
Justice

**OPINION FILED:** June 27, 2025