## CRADDOCK v. HUMBLE OIL & REFINING CO. et al.

### No. 15170.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 27, 1950.

Rehearing Denied Dec. 1, 1950.

Barnes & Barnes, of Terrell, and Suiter & Suiter, of Winnsboro, for appellant.

Jones & Jones, of Mineola, N. W. Collier, and Dillard Baker, of Houston, for appellee Humble Oil & Refining Co.

Florence & Florence, of Gilmer, for appellees Loney Wilcoxson, Grace Wilcoxson, Hedge & Gross and Gulf Oil Corp.

Archie D. Gray and Fred A. Lange, Houston, for appellee Gulf Oil Corp.

HALL, Justice.

In 1853, the State of Texas patented to the heirs of Joshua Groce one league and one labor of land situated in Wood County, Texas, a part of which is in controversy here.

The land in question is out of the east one-half of the 761¾ acre tract formerly

owned by M. W. Harris. Harris conveyed the west 380¾ acres to Ellison, which is not in question here. On April 10, 1909, Harris deeded to G. W. Dawson a 217 acre tract, which is part of the east half of said 761¾ acre tract, same being out of the east portion of the middle third of the Joshua Groce Survey, supra. G. W. Dawson et ux. deeded 50 acres to Juston Wilcoxson on May 1, 1914, which is the same 50 acres involved in this law suit, wherein Juston Wilcoxson and wife deeded to appellant, W. M. Craddock, on April 23, 1919. G. W. Dawson et ux. deeded to W. M. Steward on March 14, 1914, another 50 acre tract adjoining the above now owned by appellant. The same tract is now owned by appellee, Loney Wilcoxson, which was deeded to him on September 10, 1929, by Delila Wilcoxson, who acquired it by deed from W. M. Steward. The south line of appellant's tract and said appellee's tract occupy the entire south line of the 217 acre tract formerly owned by Dawson.

On May 31, 1949, appellant filed his third amended original petition against Humble Oil & Refining Co. and others, and, among other allegations, sued for cancellation of an oil and gas lease, damages for drilling an oil well without a valid lease, damages for failure to protect appellant's premises from damage; damages for slander of title allegedly caused by incorrect survey made by appellee Humble, and, in the alternative, sued for removal of cloud from title to 12.08 acres alllegedly lying in the east portion of his tract.

Loney Wilcoxson and wife, together with Hedge and Gross and Gulf Oil Corporation, intervened on June 10, 1949. It is remembered that Loney Wilcoxson owns the 50 acres of land adjoining appellant's tract, upon which the Gulf Oil Corporation owns a lease and Hedge and Gross hold mineral interests thereunder.

The case was tried to a jury; the jury answered the boundary issue submitted in special issue No. 1 against appellant, and the limitation issues submitted in special issues Nos. 2 and 3, that is the five and ten year statutes of limitation, in favor of appellant. Judgment on the verdict was granted to appellee Humble and judgment notwithstanding the jury's answers to the limitation issues was granted to intervenors.

Appellant's appeal consists of sixteen points, the first of which is overruled, wherein complaint is made because the trial court erred in refusing to grant him judgment.

We will discuss appellant's points one, two, three, four, five and nine conjunctively, which are respectively as follows:

2. "The court erred in refusing to submit to the jury appellant's requested Special Issue No. 1, or some similar issue, it being the province of the jury to find the location of the line between the two tracts of land in question."

3. "The court erred in submitting to the jury Special Issue No. 1, as submitted, the same being a general charge, on the weight of the evidence and being in effect a peremptory instruction."

4. "The court erred in fixing the boundary line as a matter of law."

5. "The court erred in instructing the jury to disregard all calls in deeds to the land in question."

9. "The court erred in decreeing to L. Wilcoxson title to land different from that described in his deed, increasing his acreage and differently describing more land than prayed for in his pleading and to appellant less land than conveyed to him, and setting out a new description thereto, thereby setting aside the deeds and by decree executing new and different conveyances."

It is necessary at this point to briefly state a record description of some of the material calls in the deeds heretofore referred to. As heretofore stated, the south line of appellee Wilcoxson's tract and appellant's tract occupy the entire south line of the 217 acre tract which Harris conveyed to Dawson, thus the south line of said 217 acre tract and the south line of the Emma Jager tract (which she purchased from M. W. Harris) constitute the entire south line of said east 381 acre tract formerly owned by Harris. A material call in the deed from Harris to Dawson of the 217 acre tract is as follows: "Thence South

1733⅓ varas for the S. W. corner of this tract, being the S. E. corner of said 380¾ acre tract; thence East 770 32/100 varas the S. W. corner of a 50 acre tract sold to Mrs. Emma Jager." It is noted that Harris deeded to Jager on April 1, 1909. It is also noted that the 50 acre tract that Dawson conveyed to Steward is junior to the Jager tract but senior to appellant's tract, which Harris deeded to Dawson, Dawson to Juston Wilcoxson, and Wilcoxson to appellant. It is also noted in the deed from Dawson to Steward, which is the tract owned by appellee Wilcoxson, being the senior tract to that of appellant's, the following calls:

"Being 50 acres out of the south East corner of said 217 acre tract and beginning at the South East corner of said 217 acre tract; thence north with the east boundary line of said tract 727.6 varas to a point in the east boundary line thereof; thence West parallel with the South boundary line of said 217 acre tract 385.16 varas to a point; thence south 727.6 varas parallel to the boundary line of said 217 acre tract to a point in the south boundary line of the said 217 acre tract hereinbefore referred to, said point being 385.16 varas from the South West corner of said 217 acre tract; thence east 385.16 varas to the point of beginning; said containing 50 acres of land."

The following calls are noted in the deed from Dawson to Juston Wilcoxson, former grantors of the land now owned by appellant:

"Beginning at the SW corner of the said 217 acre tract, out of the said Joshua Groce league and labor survey, as a beginning corner; thence East along the south boundary line of the said 217 acre tract 385.16 vrs. to a point in the said South boundary line of said 217 acre tract, the SE corner of this tract, and said point also being the SW and the beginning corner of a certain 50 acre tract or subdivision of the said 217 acres heretofore conveyed by the same grantors herein to W. M. Stewart; thence North parallel with the West boundary line of the said 217 acre tract 727.6 vrs. to a point, the NE corner of this tract, and also being the NW corner of the said tract 50 acres heretofore conveyed to the said W.

M. Stewart; thence west parallel with the South boundary line of the said 217 acre tract 385.16 vrs. to a point in the West boundary line of said 217 acre tract, the NW corner of this tract; thence South along the west boundary line of the said 217 acre tract 727.6 vrs. to the place of beginning, containing 50 acres of land."

Appellant's requested special issue inquires of the jury to determine which of three lines does it find from a preponderance of the evidence is the correct boundary line between the Craddock tract and the Wilcoxson tract. The three lines outlined in appellant's requested special issue are: (1) The line set out by surveyor Compton as being 286.76 east of the southwest corner of the Craddock tract; (2) the line set out by surveyor Rest as being 297.72 varas from the southwest corner of the Craddock tract; and (3) the line contended for by appellant (plaintiff) as beginning at a point on the south boundary line of the 217 acre tract, 385.16 varas east of the southwest corner of said 217 acre tract, mentioned and described in the evidence and extending parallel with the west boundary line of said tract, 726.6 varas to a point as his east boundary line, said line being herein designated as Compton line, Rest line and Craddock line.

The court submitted as special issue No. 1 the following:

"There being no dispute in the evidence that the Southeast corner of the tract called 367 acres as identified as a point on the ground from which a post oak bears S. 70 E 10 varas and another bears N. 47 E. 1-⅓ varas (the land involved herein being a part of this 367 acre tract), and the Southeast corner of the tract called 217 acres out of which the land herein involved is a part, being a point on the south line of this tract called 367 acres which is 469–68/100 varas West from the identified Southeast corner of the 367 acre tract, as conveyed off to Emma Jager, which is not disputed; then if a line is run North from this point 727.6 varas to a point for corner, and from that point a line is run west *parrel* with the south boundary line of the tract called 217 acres for a distance of 385–16/100 varas

to a point of the Northwest corner of the Stewart (or Lonnie. Wilcoxson) tract; and from this point run a line south and parallel with the east and west boundary lines of the 217 acre tract to a point on the south line thereof, then answer Question No. 1: What does a preponderance of the evidence show is the actual measured distance from this point on the south boundary line, to the identified corner of the tract owned by W. M. Craddock? (In answering this question you will disregard any distance called for in any deed as to this distance but simply find the measured distance on the ground) You will answer this question No. 1, in distance in varas, as you find from the evidence. Answer: 286.76."

We note the trial court's qualification to appellant's bills of exceptions, which exceptions are the basis for appellant's points two, three and five, as follows:

"The parties in open court agreed that there was no dispute as to the identity as to the SE corner of the Jager tract and also as to the SW corner of the W. M. Craddock tract; that these objections are therefore overruled to which *defendant,* excepts:

"Nat W. Brooks

"Judge presiding."

■ Under the law when appellant accepted and filed these qualified bills of exceptions by the trial court, he became bound by such qualifications and it will be presumed that the qualifications were made with the consent and approval of appellant in the absence of a proper showing to the contrary. In other words, the qualification becomes a part of the bill itself and is controlling as to the facts stated therein. We therefore must accept the same as true. See 3A Tex.Jur., pp. 704–706, sec. 547; see also Rule 372, Texas Rules of Civil Procedure, secs. (i) and (j).

■ We do not find the court erred in the way and manner he submitted the above special issue according to his qualification of appellant's bills of exceptions. Such qualified bills establish location, on the ground, of the southwest corner and the southeast corner of the east 381 acre tract as agreed to by all the parties; however,

we note here there was no substantial testimony controverting these facts.

■ We will assume that Dawson thought he was deeding two 50 acre tracts of land when he originally made the deeds to Wilcoxson and to Steward. The field notes in the deeds call the distance between the above corners as being 1240 varas. The uncontradicted testimony shows that the actual measurement on the ground is a distance of only 1142 varas. The trial court placed the shortage in the junior grant now owned by appellant. We think this to be the correct way under the law of deciding shortages in two different tracts of land where one is senior of the other, see Kirby Lumber Co. v. Gibbs Bros. & Co., Tex. Com.App., 14 S.W.2d 1013; Thomson v. Langdon, 87 Tex. 254, 28 S.W. 931; Maddox Bros. & Anderson v. Fenner, 79 Tex. 279, 15 S.W. 237; Lilley v. Blum, 70 Tex. 704, 6 S.W. 279, for the reason that the primary purpose of such inquiry, as this, is to ascertain where the land actually lays on the ground and the court will not adhere to an erroneous call because the locative calls control over the descriptive calls. Appellant's deed calling for distance as well as for an adjoinder to the southwest corner of appellee Wilcoxson's land, the trial court was correct in holding that the call for the adjoinder controlled over the call for distance.

We overrule appellant's points two, three, four, five and nine.

Appellant's points six and seven are as follows:

6. "The location of the line between the Wilcoxson tract and the Craddock tract having been set out and defined in the original deeds to said tracts and in all deeds and conveyances of either of said tracts for many years, the lines to each tract designating the same corner and dividing boundary line, fixes the boundary as a matter of law."

7. "The Southeast corner of the Craddock tract and the Southwest corner of the Wilcoxson tract being a point specifically fixed in a chain of deeds for many years, and identified on the ground, becomes and is a monument, fixed and defined in the

deeds, and controls over course and distance and cannot be set aside by oral evidence."

We overrule these points of error because of appellant's testimony revealing that he did not know where his east line was located on the ground, that he never had a line fence between his tract and intervenors' tract and there were no monuments or marks on the ground at the southeast corner of appellant's tract. See Caswell v. Faulk, Tex.Civ.App., 97 S.W.2d 341, error refused. Then too, appellant made no request for the submission of such an issue, and the same is thereby waived. Rule 279, T.R.C.P.

Appellant's point eight is as follows:

"The court erred in instructing the jury to disregard the calls for distance in all deeds, for the reason that, if the original deeds executed by the owner of the 100 acre tract of land show his intention to equally divide said tract and convey to Stewart the East one-half and to Justin Wilcoxson the West one-half, and the jury finds that there is a shortage in said tract, the court will presume this to be his intention and decree to each of the owners, L. Wilcoxson and W. M. Craddock, one-half of said tract."

We overrule this point because the record reveals that there was no plan or scheme on the part of Dawson to divide the two tracts of land equally and to convey the same accordingly. The record shows that he deeded intervenors' tract of 50 acres some two or three months before he deeded the one now owned by appellant. Neither of the deeds refers to a plan, design or intention to equally divide the land but evidently does reveal that Dawson thought he owned 100 acres. So we find the facts in this case do not justify an application of the apportionment rule. See 97 A.L.R., pp. 1227–1230, and cases there cited.

Appellant's points ten and eleven complain of the action of the trial court in granting intervenors judgment notwithstanding the jury's answers to special issues two and three and in not rendering judgment for appellant upon the jury's having found for appellant upon the five and ten year statutes of limitation.

The undisputed evidence in this case shows that neither appellant nor his tenants ever had any actual adverse use or possession of the land lying east of the point fixed by the jury as being the southeast corner of the Craddock tract, located 286.76 varas east of the recognized and identified southwest corner of said Craddock tract; there being no evidence to raise issues Nos. 2 and 3 relative to contravening the five and ten year statutes of limitation, the court did not commit error in rendering judgment for intervenors, notwithstanding the findings of the jury on the issues of limitation. Craddock himself testified that he did not clear any land over on the east side of his land, that same was covered with postoaks and other timber, that he had never built a fence along the line between him and appellee, which would have taken in this 12.08 acres of land in dispute.

We overrule these points.

Appellant's point twelve is as follows: "The court erred in his statement that the location of the West boundary line of the Emma Jaggers tract is undisputed."

We note the trial court qualified appellant's bills of exceptions raising this point as follows:

"The parties in open court agreed that there was no dispute as to the identity as to the SE corner of the Jager tract and also as to the SW corner of the W. M. Craddock tract; that these objections are therefore overruled to which *defendant,* excepts:

"Nat W. Brooks
"Judge presiding."

The law pertaining to this state of facts is heretofore discussed and the point is overruled.

Appellant's thirteenth point is as follows: "The court erred in holding the oil and gas lease held by appellee, Humble Oil and Refining Company in *affect.*"

The lease of appellee Humble provides, in paragraph 4, that delay rentals shall, among other ways, be credited to the lessor in the First National Bank at Quitman.

Appellant contends rental for the year 1948 was not properly paid by appellee Humble but it is undisputed by the Vice President of said Bank and supported by its records that said rental was deposited in the Bank on February 20, 1948; it was due on March 9, 1948. The Bank placed the money in a lease rental deposit account in the name of appellant. Appellant contends the Bank should have placed the money in his personal checking account. If any mistake was made in the way and manner same was handled, it was at the instance of appellant's agent, the bank. See 31A Tex. Jur., pp. 261–263; Hunter v. Gulf Production Co., Tex.Civ.App., 220 S.W. 163. The least we can say is that the money was placed in the Bank and in an account for the benefit of appellant. We overrule this point.

Appellant's fourteenth point complaining of the trial court's action in assessing costs against him and in failing to assess said costs against Humble Oil & Refining Co. is overruled.

Appellant's fifteenth point raises the question as to whether the court committed error in permitting a witness of appellee Humble, who was a surveyor, to testify to a line calling different from that set out in the deed to W. M. Craddock and in the lease held by appellee Humble.

It must be remembered that appellant sued appellee Humble for slander of title, wherein he contends that when appellee Humble made application to the Railroad Commission for drilling permits it submitted a description of appellant's land different from that which is recited in the deed, that such misrepresentation created a cloud upon his title. In answer thereto Humble plead and undertook to show by the testimony of the surveyor that appellant only owned 37.9 acres instead of 50 acres. We find it necessary for oil companies at their instance, if they so desire, to ascertain boundary lines of land which they have under lease in order to make proper application for drilling permits. We further find that testimony of surveyors is admissible in boundary disputes. 7 Tex. Jur., p. 217, sec. 67. This point is overruled.

Appellant's sixteenth and last point complains of the trial court's action in allowing intervenor Loney Wilcoxson, over his objection, to testify to statements made by his mother as to the location of his west boundary line because said statements were hearsay and described a line different from that set out in her deed to him and different to the lines as surveyed by the surveyors. Since the trial court established the corners in question as a matter of law and by agreement between the parties, we do not find the error, if any, was harmful. In boundary disputes, testimony of former deceased grantors or their grantees are sometimes admissible to show the corners and boundaries of the land claimed by such former deceased owner. See 7 Tex.Jur., pp. 120, 194, 236–240.

Finding no error, the judgment of the trial court is affirmed.