**J. A. McCARTY, Appellant,**

v.

**Odis WHITE, Appellee.**

No. 3372.

Court of Civil Appeals of Texas.

Eastland.

May 16, 1958.

**156**

W. L. Bass, Wichita Falls, for appellant.

Woodruff & Hollaway, Brownwood, for appellee.

GRISSOM, Chief Justice.

McCarty was one of the owners and operators of a producing oil and gas lease and White was the subsequent lessee of the grazing rights on the same tract. White alleged that 35 head of his sheep died from drinking poisonous substances which McCarty negligently permitted to escape from his separator and flow into the pasture where his sheep grazed and that defendant was negligent in not fencing the ditch and in failing to give him notice that such substances were escaping and flowing on the pasture. In a trial to the court plaintiff recovered judgment for the value of 18 head of sheep. McCarty had appealed.

There was evidence that during a freeze some oil came over the top of defendant's separator and covered a place about three and one-half feet square under it and drained off with the salt water down an eight inch ditch about seventy feet to a pit; that salt water habitually trickled down this ditch to the pit and that the ditch and pit had long been so used and plainiff knew thereof. If a finding of negligence can be justified it must be based on the fact that during a freeze some oil was forced over the top of the separator, stood under it and rode in small patches on the top of the salt water to the pit.

McCarty contends that, as a matter of law, when White's sheep grazed the area around the separator, ditch and pit they were trespassers and the only duty he owed plaintiff was not to intentionally kill them. We have held that even when an oil and gas lessee holds the dominant estate he may be liable to a subsequent grass lessee for negligence in the maintenance of such an area. Weaver v. Reed, Tex.Civ. App., 303 S.W.2d 808. We think this conclusion is supported by Warren Petroleum Corp. v. Martin, 153 Tex. 465, 271 S.W.2d 410; Warren Petroleum Corp. v. Monzingo, Tex., 304 S.W.2d 362 and Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221. Our Supreme Court has consistently held that an oil and gas lessee who holds the dominant estate has the right to use so much of the surface and to use it in such manner as is reasonably necessary for carrying out the purposes of his lease, but that he must exercise his rights with due regard for the rights of a subsequent grass lessee. The burden was on the plaintiff to allege and prove that defendant was guilty of some specific act of negligence which was a proximate cause of the death of plaintiff's sheep. Without quoting in great detail evidence introduced for the purpose of showing that defendant was negligent in permitting oil to escape and settle on the ground under the separator and ride in patches about the size of a man's hand on top of the salt water down the drainage ditch to a pit seventy feet away, the evidence, including that of the plaintiff, is without dispute that in the kind of weather that then existed some oil would ordinarily escape from the separator. Plaintiff testified that in such weather a "skim" of oil would escape; that you had to drain "the stuff" out of the tanks down the ditch; that you had to drain the salt water from the tanks all the time; that at the time in question it was "freezing"; that he did not know what was flowing down the ditch except that there were "little sluffs" of oil on the salt water going down the ditch to the pit; that defendant put "Treater-Lite" in the tank "which all of us over there at that time was having to do * * *." "He had to put something in there to cut that stuff out to where it would go to the bottom and to where he could drain it off". Plaintiff testified that the gaugers would not take the oil; that they would not let it go

into the line unless you cut it out of the tank with something; that he first saw or used Treater-Lite in 1924 in Corsicana; that he had seen and used it since and that he did not know what effect Treater-Lite would have on livestock but something of the kind had to be used and he thought it was the best. Plaintiff further testified:

"Q. That is the usual and customary way of producing oil in this area? A. Well, it would have to be that way, wouldn't it?

"Q. I am asking you. A. Yeah.

"Q. Yes, sir. And you have used Treater-Lite, I believe you said, since 1924, about? A. I believe that is the first I ever—Yes, sir.

"Q. Is that customarily used around this area? A. Well, it is with the companies that can afford it and will. It is about the best, I think, you could use."

\*      \*      \*      \*      \*      \*

"Q. I think you said that the separator would overflow in cold weather? A. I don't know whether you call it that or not. I said kick over, fail to separate all the oil—

"Q. Well, kick over is what it would do in cold weather? A. Yeah. That's right. Small tanks.

"Q. Any of them that small would? A. Well, I think so; yes, sir."

\*      \*      \*      \*      \*      \*

"Q. Mr. White, based on your experience in the oil field, what steps could a person have taken to have prevented that oil from kicking over the top of the separator? A. Sir, I don't know. You see those things are fixed to where—that is the way they drain. That is the way they drain over the top."

█ █ All the testimony was to the effect that in very cold weather paraffin would get heavy and cause some oil to be pushed over the top of all such separators. All of the evidence was to the effect that oil was being produced in the customary manner. There was no allegation of any specific act that could constitute negligence. We are forced to the conclusion that the evidence is insufficient to sustain a finding that defendant was negligent. There was neither allegation nor evidence that any of defendant's equipment was defective. Defendant had no duty to fence the separator and drainage ditch to keep plaintiff's sheep away and the fact that defendant had fenced the pit did not create such an obligation. Plaintiff testified in effect that he was an experienced oil producer and knew that in cold weather the separator would "kick over" an "oil skim"; that "you have to drain the stuff out of those tanks down the ditch"; that to produce oil in such weather you had to use "Treater-Lite" or something similar to cut "that stuff" to "where it would go to the bottom" and you "could drain it off" and that defendant was producing oil in the usual and customary manner and that he did not know what could have been done to prevent "oil from kicking over the top of the separator".

Appellee presents a counter-point to the effect that the court erred in failing to award damages for the death of the 35 head of sheep instead of eighteen. We think there was evidence to sustain that finding.

The judgment is reversed and judgment is rendered for appellants. Warren Petroleum Corp. v. Martin, supra and Warren Petroleum Corp. v. Monzingo, supra.