Annie Kate KENNY, Appellant,

v.

**TEXAS GULF SULPHUR COMPANY,**
Appellee.

No. 3927.

Court of Civil Appeals of Texas.

Waco.

Nov. 2, 1961.

Rehearing Denied Nov. 30, 1961.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellant.

Orgain, Bell & Tucker, Beaumont, Jos. C. Brown, Houston, for appellee.

McDONALD, Chief Justice.

This is a suit for damages occasioned by the subsidence (or falling downward), of the surface of 41 acres of land. Plaintiff is the owner of the surface estate' of such land. Defendant is owner of the mineral estate by virtue of a mineral lease. The activities of defendant in removing the sulphur underlying plaintiff's surface, caused subsidence (or a lowering or shifting downward) of the surface of 41 acres of the plaintiff's lands from some 2 inches to some 3 feet. Plaintiff sought damages; exemplary damages; and a permanent injunction to prevent future sulphur mining operations by defendant. The case was tried on stipulations of fact, before the court, except for the damage issue which was tried to a jury, and resulted in a finding of $11,134.

The Trial Court entered judgment that plaintiff take nothing, and plaintiff appeals, contending:

1) The Trial Court erred in holding that the doctrine of subjacent support is not applicable where the undisputed evidence showed that the surface estate of plaintiff was caused to subside permanently by sulphur mining operations intentionally and wilfully conducted by the defendant owner of a mineral lease hereon.

2) The Trial Court erred in denying plaintiff exemplary damages.

3) The Trial Court erred in refusing to grant plaintiff a permanent injunction to prevent defendant from continuing to mine sulphur, and cause subsidence to plaintiff's surface estate.

A summary of the stipulations of the parties follows:

1) Plaintiff is the owner of the surface estate only, of the property in controversy, having acquired same by virtue of deed dated 24 December, 1943. (Such deed provides: "It is further understood and agreed by grantor and grantee that this deed of conveyance is intended to convey the surface rights only, and does not convey any of the minerals whatsoever")

2) Defendant owns the sulphur leasehold estate and is and has been since June, 1958, producing sulphur from the premises (by means of the Frasch Process), under and by virtue of rights accruing to it under leases. (Such leases provide that defendant "shall have the exclusive right to mine for and produce all of the minerals underlying said premises so long as any one of them can be produced in paying quantities"; and further provides that defendants shall have "also such other privileges as are reasonably requisite for the conduct of such operations." Such lease was executed by plaintiff's predecessor in title and provides "all conditions and terms herein shall extend to the heirs, executors, successors in interest and assigns by the parties hereto."

3) The "Frasch Process" of producing sulphur includes among other things the drilling of relatively shallow wells through the surface soil, the unconsolidated sediments, the limestone and calcite caprock, and into the sulphur bearing limestone and calcite situated below the surface. Once such well is drilled, then pipes are inserted therein and through the injection of superheated water, the solid sulphur is melted and recovered from pipes inside the hole by means of lifting with compressed air. Before the injection of the heated water,

the sulphur is in a solid state within cavities of varying sizes in the limestone and calcite-bearing formation and supplies a part of the support to the surface of the said lands situated as those of the plaintiff. When the solid sulphur is removed, the cavities left by the removal cause a natural subsidence of the formations and soils above.

4) At the time of the creation of defendant's leasehold estate, and at all times since, the only commercially known method of producing sulphur in the region of the Gulf Coast was by the "Frasch Process".

5) Subsidence is a necessary, natural, reasonable, normal, inevitable, and proximate result expected from the production of sulphur by the Frasch Process.

6) Plaintiff acquired her title to said property and entered into possession of same, at a time when the instruments creating defendant's leasehold title were of record, (and at a time when defendant's predecessor in title, Gulf Oil Corporation, was in actual physical possession of the premises producing oil under the terms of said lease).

7) Some 110,021 long tons of sulphur have been taken from under the premises.

8) Subsidence has occurred to 41 acres of the property.

9) Defendant intends to continue production of sulphur from plaintiff's land in the future by the Frasch Process, and additional subsidence will occur.

10) While subsidence had occurred in Texas and Louisiana, in connection with the production of sulphur by the Frasch Process, such fact was not known to plaintiff when she acquired title to the surface of the land involved, but was known generally among those familiar with the sulphur mining industry.

In summary, we have the owner of the surface of land suing the defendant mineral lessee of such land, for the subsidence of

the surface of the land, as a result of the lessee's taking sulphur out from under the land, under the terms of the lease, by the only commercially known process for producing sulphur. There is no question but that the surface of the land has been damaged, and that it will be damaged by further subsidence, as more sulphur is removed from under the land. Plaintiff contends that though there is no statute or case in point in this exact situation, that since sulphur is a solid, that the owner of the surface is entitled to have the defendant provide subjacent support of the surface, and that such right is absolute. Plaintiff cites: 58 C.J.S. Mines and Minerals § 278, p. 783; 1 Am.Jur. 532; 36 Am.Jur. 405; 32 A.L.R.2d 1309; as well as cases from Alabama, Colorado, Illinois and Pennsylvania, which sustain the doctrine of subjacent support in coal mining cases. Plaintiff contended that since sulphur is a solid, as is coal, that such authorities and doctrine should be applied.

We revert to plaintiff's 1st contention that the trial court erred in holding that the doctrine of subjacent support is not applicable where plaintiff's surface estate is caused to subside by sulphur mining operations conducted by the owner of a mineral lease.

■ It is stipulated that plaintiff owns the surface estate only, and that defendant owns the mineral interest by virtue of a valid lease. Under the laws of Texas, the mineral lessee is permitted to use so much of the premises and in such a manner as is reasonably necessary to enjoy the mineral estate conveyed by the lease, and to effectuate its purpose. Warren Petroleum Corp. v. Monzingo, 157 Tex. 479, 304 S.W.2d 362, 65 A.L.R.2d 1352. The lease creating defendant's sulphur leasehold estate in the land expressly granted the right to produce sulphur and necessarily contemplated subsidence as a reasonable and necessary result expected from the use of the Frasch Process, which it is stipulated by and between the parties is the only commercially known method of producing sulphur.

■ Plaintiff purchased the premises burdened with the lease. Defendant, owner of the lease, is not liable to her for the subsidence of her surface estate, since subsidence is (and is so stipulated by the parties) a necessary, natural, reasonable, normal, inevitable and proximate result expected from the production of sulphur by the Frasch Process.

Plaintiff may have the right to have her property free of subsidence caused by others, (as adjacent landowners, etc.) but when the subsidence is the natural result of the producing of sulphur under a lease, by a lessee, plaintiff cannot complain. She owns her surface burdened with the right of defendant to take the sulphur. Under an oil, gas, and mineral lease, the surface estate is servient to the mineral estate for the purposes of the mineral grant. The right to take the sulphur must be reasonably exercised with due regard to the rights of the surface owner. The plaintiff's predecessor has granted and leased to the defendants so much of the land as reasonably necessary to effectuate the purposes of the lease, and to be used in a non-negligent manner. General Crude Oil v. Aiken, Tex., 344 S.W.2d 668; Brown v. Lundell, Tex., 344 S.W.2d 863.

There is no contention or question of negligence in the instant case, and we think that since the defendant had the *right* to produce the sulphur under its lease, and since it is stipulated that subsidence was a natural, normal, inevitable result of getting the sulphur by the only commercially known process, that defendant's conduct and acts in producing the sulphur are authorized by its lease, and that the plaintiff's *right* to have her land free of subsidence, was one of the rights disposed of by her predecessor in title, when the lease was made.

All of plaintiff's points are overruled and the judgment of the Trial Court is affirmed.