James T. CARROLL et ux., Appellants,

v.

ROGER LACY, INC., et al., Appellees.

No. 195.

Court of Civil Appeals of Texas.

Tyler.

March 31, 1966.

Rehearing Denied April 28, 1966.

Welby K. Parish, Lowell C. Holt, Gilmer, for appellants.

J. T. Harris, Longview, F. L. Garrison, Gilmer, for appellees.

DUNAGAN, Chief Justice.

This suit was instituted in the trial court by James T. Carroll, Jr. and wife, Naomi Carroll, against the appellees to declare a lease held by the appellees, R. Lacy, Inc. and J. W. Griffith, to be terminated and prayed for judgment to remove cloud from title on their property and that they have judgment against the appellees, jointly and severally, for the recovery of title to an undivided one-fourth (1/4th) of the oil, gas and other minerals in and under the 94.88 acre tract of land in controversy.

The appellants further alleged in their third original amended petition:

"That subsequent to Plaintiffs' notification to Defendant, R. Lacy, Inc., that said oil, gas, and mineral lease had terminated, said R. Lacy, Inc., its agents, servants and employees, during the month of April, 1962, over the protests of Plaintiffs, maliciously, and without any legal right or authority, and with full knowledge that it had no legal right or authority, entered upon said land and began to drill and did drill an oil well on said land; that R. Lacy & Company, Inc., also in 1962 and during the month of May, over the protests of Plaintiffs, started to drill and did drill another oil well on said land.

"That R. Lacy, Inc., in so drilling said wells, destroyed a great deal of grass and turf on the land of said Plaintiffs, and further, in the process of drilling said wells, pumped the water used for the drilling thereof from a pond used by Plaintiffs in the watering of cattle which they were pasturing on said land, and said pond was pumped completely dry. Further, Defendant, R. Lacy, Inc., its agents, servants and employees, during the drilling of said wells, left open Plaintiffs' pasture gates, tore down the fences belonging to the Plaintiffs, and allowed the cattle owned by the Plaintiffs to get out

of said pasture, and Plaintiffs, at their own expense, were required to round up said cattle, put them back in the pasture, repair said fences and gates, all of which expense Plaintiffs would not have had except for the wrongful act of R. Lacy, Inc., its agents, servants and employees, all to the plaintiffs' damages in the amount of SEVEN THOUSAND ($7,000) DOLLARS.

"That since the malicious, unlawful and illegal drilling of the said two oil wells on Plaintiffs' land, R. Lacy, Inc., and its assigns have wrongfully extracted oil, gas, and minerals from said lands, and have converted same to their own use and benefit to the value of approximately ONE HUNDRED THOUSAND ($100,-000) DOLLARS. * * *"

The appellants, plaintiffs in the court below, sought judgment against the appellees, jointly and severally, for the total sum of $107,000.00.

This case was tried before the court without the aid of a jury.

The court rendered judgment for the appellees, finding that the oil, gas and mineral lease dated November 6, 1953, from O. H. Smith and wife, Beucie Smith, lessors, to Sol Simon, lessee, was in full force and effect and is now owned by R. Lacy, Inc. and J. W. Griffith, jointly, but found that damage in the sum of $450.00 had been done to the surface of said land by the operation of drilling of oil wells thereon and the production and marketing of oil therefrom and rendered judgment in that amount to appellants. The judgment further ordered that the appellants take nothing by their suit to cancel the oil, gas and mineral lease involved; and it further ordered that the appellants have and recover of and from the defendant, Lyons Petroleum Company, as operator of the leasehold estate in said land, the sum of $450.00 on account of damage done to said land and the fences, grass and timber thereon.

Findings of fact and conclusions of law were prepared and filed by the trial court at the request of appellants and none of those findings of fact were challenged by appellants, nor did they request any other or further findings.

Appellees, R. Lacy, Inc. and Lyons Petroleum Company, at the outset in their brief, contend that this appeal should not be further considered by this court because: " 'Roger Lacy, Inc.' was named as a defendant in Appellants' original petition herein, but after answers had been filed stating that there was no such corporation in existence but that there was a corporation named 'R. Lacy, Inc.', Appellants, in their Third Amended Petition, named 'R. Lacy, Inc.' as a defendant, omitting 'Roger Lacy, Inc.', thereby dismissing 'Roger Lacy, Inc.' from the suit. Yet, the instrument denominated an 'Appeal Bond' names only 'Roger Lacy, Inc.' as payee therein, and, therefore, it amounts not to a bond in this case, since it fails to name any defendant as payee therein and is not payable to the Clerk of the court or any other officer of the Court. Furthermore, said 'Appeal Bond' bears the signatures of Welby K. Parish and Lowell C. Holt as its only sureties, and since they are the attorneys for Appellants and no showing is made of prior approval by the trial court, their signatures as sureties are prohibited by the Texas Rules of Civil Procedure, Rule 142."

■ These appellees have filed no motion in this court to strike the bond and dismiss the appeal because of these alleged defects, but have presented their objection in their brief filed in this court on February 7, 1966. The transcript in this cause was filed in this court on July 23, 1965. We overrule these objections. The bond, though defective, is in fact a bond and upon timely request may have been amended. Grogan Mfg. Co. v. Lane, 140 Tex. 507, 169 S.W.2d 141, 1943 (S.Ct.); Shanklin v. Rogers, 213 S.W.2d 730 (Tex.Civ.App.) 1948, n. w. h.

■ The failure to include the proper obligees in the bond is not jurisdictional. Speckels v. Kneip, 170 S.W.2d 255 (Tex. Civ.App.) 1942, writ refused, and Shanklin v. Rogers, supra.

■ Furthermore, it seems to be well settled when there are defects of substance or of form in an appeal bond, such defects are not jurisdictional and are waived by failure to present objections to the bond by motion within 30 days after the transcript is filed. Rules 404 and 430, T.R.C.P.; Conlee v. Burton, 188 S.W.2d 713 (Tex.Civ.App.) 1942, n. w. h.; Shanklin v. Rogers, supra; Pillow v. McLean, 126 Tex. 349, 88 S.W.2d 702, 1935. See also Neely v. Tarrant County, 132 Tex. 357, 124 S.W.2d 101, 1939; Pfeffer v. Meissner, 286 S.W.2d 241, 251 (Tex.Civ.App.) 1955, n. r. e.; Henslee v. State of Texas and County of Dallas, 375 S.W.2d 474 (Tex.Civ.App.) 1963, writ refused, n. r. e.

■ Even though an attorney of record is not permitted to sign appeal bond without the consent of trial court, nevertheless it has been held in this state where counsel for appellant signed appeal bond without special leave of court, in direct violation of this rule, but appellees made no objection to the appeal bond, and more than 30 days had passed, appellees could not gain anything by filing a motion to dismiss the appeal, in view of Rule 430 and 431, making liberal provisions for the correction of records on appeal, Morton v. Morton, 286 S.W.2d 702 (Tex.Civ.App.) 1955, n. w. h., and such error, if any, may have been waived. Wilkie v. Dean Lumber Co., 289 S.W.2d 402 (Tex.Civ.App.) 1956, writ refused, n. r. e.

## ON THE MERITS

The appellants by their Point of Error No. 1 [1] contend that the oil, gas and mineral lease had terminated as a matter of law.

The trial court found and the record shows that:

"Title to land described in plaintiffs' petition is not questioned in this action and the only title question involved herein is title to the leasehold estate in and to an undivided one-fourth of the oil, gas

and other minerals in, under and that may be produced from said 96½ acres of land, more or less.

"Title to the remaining undivided three-fourths of the oil, gas and other minerals in, under, upon and/or produced from said land was not attacked and it was agreed by plaintiffs that the oil, gas and mineral leases covering such undivided three-fourths of said minerals were in full force and effect.

"Title to the surface of the land described in plaintiffs' third amended petition and to an undivided one-fourth of the oil, gas and other minerals in, under, upon and produced from said land is vested in plaintiffs, subject to the vendor's lien and deed of trust lien securing note executed by plaintiffs for a part of the purchase price of said land which was purchased by plaintiffs from O. H. Smith and wife, Beucie Smith."

The evidence shows that on November 6, 1953, O. H. Smith and wife, Beucie Smith, owned the surface of the above described land in fee simple and an undivided one-fourth interest in and to the oil, gas and other minerals on, in and under the same. On the above date, O. H. Smith and wife executed a lease covering the oil, gas and other minerals owned by them in and under the 94.88 acre tract of land in controversy for a period of ten years to Sol Simon, said lease being recorded in Volume 71, page 149 of the Oil, Gas and Lease Records of Upshur County, Texas.

The oil, gas and mineral lease above mentioned contained the following provision:

"If drilling operations are not commenced on said land on or before one year from the date hereof, this lease shall then terminate as to both parties, unless Lessee shall pay or tender to Lessor or to the credit of Lessor in First National Bank at Gilmer, (which bank is Lessor's agent) the sum of ($25.00) Twenty Five Dollars

---

[1]. The trial court erred in holding the lease of Appellees to be valid and in full force and effect because the lease had terminated as a matter of law and was of no

force and effect as of November 6, 1961, and any date subsequent thereto, up to and including the present time.

($25.00) (hereinafter called "rental"), which shall extend for twelve months the time within which drilling operations may be commenced. Thereafter annually, in like manner and upon the payments or tenders, the commencement of drilling operations may be further deferred for periods of twelve months during the primary term. The payments or tenders of rental may be made by the check or draft of Lessee mailed or delivered to Lessor or to said bank, on or before such date of payment. * * *"

The record further shows and the court so found that:

"The oil, gas and mineral lease described in plaintiffs' said amended petition, from O. H. Smith and wife, Beucie Smith, parties lessor, to Sol Simon, lessee, dated November 6, 1953, for a primary term of ten years was admitted by plaintiffs to have been in full force and effect up to November 6, 1961, but plaintiffs assert in this cause that the lease was terminated on November 6, 1961, by reason of the alleged failure of the holder of said lease to pay or tender to plaintiffs, or to their credit in the Longview National Bank of Longview, Texas, annual delay rental of $25.00 to keep said lease in force for one year beginning November 6, 1961.

"The oil, gas and mineral lease above described provided that annual delay rentals should be paid or tendered to lessors or for deposit to their credit in the First National Bank of Gilmer, Texas."

On November 10, 1953, Sol Simon assigned to J. W. Griffith, the agent and vice-president of R. Lacy, Inc., an undivided one-half interest in and to the leasehold estate.

On March 8, 1962, Sol Simon assigned an undivided one-half interest in and to the leasehold estate he had acquired by virtue of oil and gas lease mentioned above to R. Lacy, Inc.

The entire annual delay rental payment called for in the lease was being paid each year by R. Lacy, Inc. for its benefit and that of J. W. Griffith.

The lease provided, among other things, the privilege of assigning the leasehold estate by either party to the lease; however, it was further provided that no change of ownership of the land or an assignment would be binding on the lessee until after lessee was furnished with a written transfer of assignment or a certified copy thereof.

On June 27, 1959, O. H. Smith and wife, Beucie Smith, conveyed by warranty deed all of their right, title and interest in and to said land, including the oil, gas and other minerals owned by them, to appellants herein, James T. Carroll, Jr. and wife, Naomi Carroll. Thereafter, the appellants furnished R. Lacy, Inc. with a certified copy of the deed from O. H. Smith and wife, to appellants.

Pursuant to the certified copy of the deed from the Smiths to the Carrolls, J. T. Harris, attorney for R. Lacy, Inc., wrote the following letter to Mr. Carroll:

"August 1960

"TEX (Upshur)
#2028-A, Smith Lease.

"Mr. James T. Carroll, Jr.
P. O. Box 72
Diana, Texas

"Dear Mr. Carroll;

"Mr. Sol Simon has handed me copy of your deed from O. H. Smith and wife, conveying 94.88 acres of land in the John Lout Survey, Upshur County, Texas. We are making notation in our file of this conveyance. Since the description contained in your deed differs to some extent from that contained in our lease, I shall appreciate it if you and Mrs. Carroll and Mr. and Mrs. Smith will sign the enclosed memorandum, as I assume that you purchased the entire tract covered by our lease. If Mr. and Mrs. Smith retained any of the acreage, please return the enclosed memorandum and advise me as to any acreage retained by

them. A stamped and addressed envelope is enclosed for your convenience.

> "Yours very truly
>
> J. T. HARRIS"

The memorandum enclosed in Harris' letter which was thereafter duly executed by the Carrolls and the Smiths, reads:

> "Diana, Texas
> "August 17, 1960

"R. Lacy, Inc.
P. O. Box 2146
Longview, Texas

"Gentlemen:

"This refers to oil and gas lease executed by O. H. Smith and wife, Beucie Smith as parties lessor to Sol Simon, dated November 6, 1953 and recorded in Volume 71, page 149, oil and gas lease records of Upshur County, Texas, and to warranty deed from O. H. Smith and wife, Beucie Smith to James T. Carroll, Jr. and wife, Naomi M. Carroll dated June 27, 1959 and recorded in Volume 242, page 19 of the deed records of Upshur County, Texas.

"It was the intention of the parties to the deed above referred to that the deed should cover all of the tract of land which is covered by the oil and gas lease which you hold, and it is therefore requested that the entire annual rental of $25.00 under your lease be paid in the future so that it will be credited to James T. Carroll, Jr. and wife, Naomi M. Carroll, in the ~~First National~~ Bank at Longview National Bank, ~~Gilmer~~, Texas.
Longview, Texas

> Yours very truly
> /s/ James T. Carroll, Jr.
> ————————————————
> James T. Carroll, Jr.
> /s/ Naomi M. Carroll
> ————————————————
> Naomi M. Carroll
> /s/ O. H. Smith
> ————————————————
> O. H. Smith
> /s/ Beucie Smith
> ————————————————
> Beucie Smith"

The court further found, and which we think the evidence supports, that:

"The memorandum mailed to plaintiff James T. Carroll, Jr. by R. Lacy, Inc. dated August 17, 1960, for signature by O. H. Smith, Beucie Smith, James T. Carroll, Jr. and Naomi M. Carroll was written for the purpose of making certain that the land described in deed from O. H. Smith and wife to James T. Carroll, Jr. and wife included all the land covered by the oil, gas and mineral lease from O. H. Smith and wife to Sol Simon, above described, the field notes in the two instruments being different. Said memorandum, as submitted for signature, stated that delay rentals under said lease should be paid so as to be credited to James T. Carroll, Jr. and wife, Naomi M. Carroll in the First National Bank at Gilmer, Texas.

"Plaintiff James T. Carroll, Jr. changed the memorandum referred to in above finding by deleting the words 'First National' and 'Gilmer' and adding below the line the words 'Longview National Bank, Longview, Texas.' "

The court also found that:

"No agreement was made by the parties for the addition of Longview National Bank as a depository bank under said lease, or to change the depository bank thereunder from First National Bank at Gilmer.

"The oil, gas and mineral lease here under consideration contained no provisions authorizing the lessor to change the depository bank shown in said lease."

The court made the additional finding which we think is supported by the evidence, that:

"Delay rental of $25.00 to cover said lease in force for one year beginning November 6, 1960, was paid by R. Lacy, Inc., to Longview National Bank, for deposit to credit of plaintiffs on October 7, 1960, and was accepted by plaintiffs.

"Delay rental in the amount of $25.00 for one year beginning November 6, 1961,

was paid by check of R. Lacy, Inc., dated October 6, 1961, said check being numbered 1792–R in the amount of $25.50 payable to the order of Longview National Bank, Longview, Texas, and drawn on the account of R. Lacy, Inc. in the Longview National Bank. Said check was received by First National Bank at Gilmer, Texas, and $25.00 thereof was placed to the credit of 'James T. Carroll, Jr. and Naomi' in that bank on October 31, 1961.

"The First National Bank at Gilmer, Texas, which received the check of R. Lacy, Inc., payable to the order of Longview National Bank, in payment of delay rental for one year beginning November 6, 1961, sent that check through banking channels for collection and said check was paid by Longview National Bank to the First National Bank of Gilmer, Texas, although said check was payable to the order of Longview National Bank but endorsed by First National Bank of Gilmer.

"That said delay rental check above described, in payment of delay rental for one year beginning November 6, 1961, drawn on Longview National Bank and drawn payable to Longview National Bank, for deposit to the credit of plaintiffs Carroll reached said Longview National Bank before November 6, 1961, and was paid by said bank on November 1, 1961.

"First National Bank at Gilmer, Texas, promptly after the deposit of said delay rental mailed to James T. Carroll, Jr. and Naomi, at their address at Diana, Texas, in Upshur County, a copy of deposit slip issued by that bank showing that deposit to the credit of James T. Carroll, Jr. & Naomi' in the amount of $25.00, covering 'rental' was credited on October 31, 1961. That notice was duly received by the plaintiffs, who had not withdrawn said $25.00 from said bank at the date of trial of this cause."

The October 6, 1961, check of R. Lacy, Inc. drawn on the Longview National Bank

and payable to the order of Longview National Bank, Longview, Texas, in the sum of $25.50 showed on its face "for deposit to credit of James T. Carroll, Jr. and Naomi M. Carroll, $25.00," and "bank service charge of 50¢ in payment of delay rentals for one year from November 6, 1961, under the terms of oil and gas lease executed by O. H. Smith, et ux., dated November 6, 1953, recorded in Volume 71, page 149, Oil and Gas Lease Records of Upshur County, Texas."

In some manner not explained, the check last above described reached the First National Bank of Gilmer and the $25.00 was, on October 31, 1961, credited to James T. Carroll, Jr. and wife, Naomi. The First National Bank of Gilmer, Texas, was shown to be the bank named in the original oil, gas and mineral lease as depository for the payment of "rental" to lessors, their heirs or assigns, under the terms of said lease, and it was expressly provided in said lease that said bank was the agent of lessors. The cancelled check is in evidence and bears the endorsements of both the First National Bank of Gilmer and Longview National Bank of Longview, Texas.

The full amount of the delay rental was shown to have been deposited to the credit of the appellants in the First National Bank of Gilmer on October 31, 1961, and notice of such credit was shown to have been mailed to appellants by said bank, which was received by the appellants, but they (appellants) refused to withdraw the money from the Gilmer bank. It was further shown that the $25.00 for delay rental would have been paid to the appellants by the Gilmer bank upon request.

The appellees contend that the memorandum was prepared and forwarded for execution by the appellants and their predecessors in title, O. H. Smith and wife, Beucie Smith, in order to clarify differences in description contained in said oil and gas lease when compared with the description contained in the deed to the appellants, and that the changing of the depository submitted in the memorandum (being same deposi-

tory named in the lease) by striking out the words "First National" and "Gilmer" and writing in "Longview National Bank, Longview, Texas" could not amount to more than a request on the part of appellants to pay the rentals to Longview National Bank for credit of the appellants.

Appellants do not agree with this contention. They contend that by virtue of the memorandum and the payment of delay rental thereafter by R. Lacy, Inc. to the Longview National Bank, that on November 6, 1961, said Longview bank was the only and proper place for the payment of the delay rental and consequently the lease automatically terminated by the appellees' failure to pay delay rental to them on the date specified and in the manner to which they had agreed to.

If the memorandum did not change the depository from that named in the oil and gas lease, the receipt by the First National Bank at Gilmer, Texas, prior to November 6, 1961, of check in payment of delay rental under said lease for one year beginning November 6, 1961, satisfied the requirement in the lease that the delay rental be paid or tendered on or before November 6, 1961.

Appellee's, R. Lacy, Inc., timely tender of the delay rentals, even though refused by appellants, was a sufficient tender to keep the lease alive. West v. Carpenter, 366 S.W.2d 826 (Tex.Civ.App.) 1963, writ refused, n. r. e.

If the depository bank for the payment of rental was changed by the memorandum to the Longview National Bank as contended by appellants, the delivery to Longview National Bank prior to November 6, 1961, of the delay rental check, payable to Longview National Bank for credit of appellants covering delay rental for one year beginning November 6, 1961, however made or accomplished, or by whom delivered, also satisfied the requirement, if any, that the delay rental payment be deposited in the Longview National Bank for the credit of appellants.

Appellee, R. Lacy, Inc., paid the $25.00 delay rental to the Longview National Bank for the account of the appellants, just as requested by the memorandum. Assuming, as contended by appellants, without so holding, that the Longview National Bank was the designated depository bank at the time the R. Lacy, Inc. check dated October 6, 1961, was issued, the Longview National Bank would be lessors' agent. York v. McBee, 308 S.W.2d 951 (Tex.Civ.App.) 1958, writ refused, n. r. e.; Richmond v. Hog Creek Oil Co., 229 S.W. 563 (Tex.Civ.App.) 1921; Cockrum v. Christy, 223 S.W. 308 (Tex.Civ.App.) 1920, n. w. h.; Craddock v. Humble Oil & Refining Co., 234 S.W.2d 137 (Tex.Civ.App.) 1950, writ refused, n. r. e.; Hunter v. Gulf Production Co., 220 S.W. 163 (Tex.Civ.App.) 1920, n. w. h.

The 1961 rental check from R. Lacy, Inc. was tendered to the owners of said property by appellee, R. Lacy, Inc., through the depository agent designated in the memorandum as requested by the appellants prior to the anniversary date of said lease and said check was paid by said bank and charged to the account of R. Lacy, Inc., upon which it was drawn. Under the above facts, we think that the tender made by appellees was a substantial and sufficient compliance with the terms of the lease and memorandum to extend said oil, gas and mineral lease in force and effect for one year beginning November 6, 1961. Hamilton v. Baker, 147 Tex. 240, 214 S.W. 2d 460, 1948; York v. McBee, supra; Hunter v. Gulf Production Co., supra; Tatum v. Fulton, 218 S.W. 1088 (Tex.Civ.App.) 1920, n. w. h.; Gulf Production Co. v. Perry, 51 S.W.2d 1107 (Tex.Civ.App.) 1932, n. w. h.; Richmond v. Hog Creek Oil Co., supra; Perkins v. Magnolia Petroleum Co., 148 S.W.2d 266 (Tex.Civ.App.) 1941, dismissed, judgment correct. As a matter of fact, the proof shows that the delay rental check dated October 6, 1961, was actually in the hands of both of said banks "before the anniversary date of said lease."

In support of their contention, the appellants point out that at no time did the appellees deposit to the credit of James T. Carroll, Jr. and wife, Naomi Carroll, in the

Longview National Bank, Longview, Texas, the delay rental which was due on or before November 6, 1961. It is true that the Longview National Bank did not deposit the rental payment to the credit of James T. Carroll and wife, nor notify them that the check had reached there, but if the Longview National Bank was the designated depository as contended by appellants, it is clear that the bank was, in law, made the agent of the lessors to receive the money and hold it for them and when the check was delivered to the Longview National Bank, with instructions from the lessees or assignees to deposit it to the credit of the lessors, the terms of the lease relative to payment of rentals were fully complied with, and any failure of the bank to pay it to the lessors, or to give them proper credit on its books, could not properly be charged to lessees or assignees. Hunter v. Gulf Production Co., supra; Craddock v. Humble Oil & Refining Co., supra; Tatum v. Fulton, supra; Gulf Production Co. v. Perry, supra.

We now come to the consideration of appellants' contention raised in their Point of Error No. 2.[2] Appellants contend that on February 26, 1962, they gave notice to R. Lacy, Inc. that the oil, gas and mineral lease had terminated for failure to pay delay rental and requested a release of the lease; that appellee, R. Lacy, Inc., refused to execute such release and subsequent to plaintiffs' notification to appellee, R. Lacy, Inc., that the oil, gas and mineral lease had terminated, said appellee, its agents, servants and employees, during the months of April and May, 1962, over the protests of appellants, without any legal right or authority, entered upon said land and drilled two oil wells thereon.

Appellants' position in this regard is that the entry was wrongful and in bad faith and constitutes a bad faith trespasser.

The oil and gas lease also contained a provision which reads:

"*  *  * has demised, leased and let and by these presents does demise, lease and let exclusively unto the said lessee, its successors and assigns, the land hereinafter described with the exclusive right of exploring for mineral indication, *  *  * and with the right of operating for and producing therefrom oil, gas, casinghead gas, casinghead gasoline, sulphur and other minerals, *  *  * and any and all other rights and privileges, incident to, or convenient for the economical operation of said land for oil, gas, casinghead gas, casinghead gasoline, and other minerals; *  *  *"

It is apparent that appellants' complaint under their Point No. 2 is founded on their belief and contention that the oil, gas and mineral lease had terminated. In disposing of appellants' Point of Error No. 1, we have hereinabove held that such lease was not terminated.

The lease here under attack by the appellants, and under which they allege that R. Lacy, Inc. caused the injuries alleged in appellants' pleadings, contains a provision for payment of damages, as follows:

"Lessee shall pay for damages caused by its operations to growing crops on said land."

And as to the use of water from pond on said land, said lease provides:

"Lessee shall have the right to use, free of cost, gas, oil and water produced on said land, also waste oil, from its operations thereon, except from wells of Lessor."

■ In view of the above quoted provision of the lease, appellants' complaint as to use of water from ponds is without merit.

2. The trial court erred as a matter of law in awarding damages in the sum of $450.00 as a result of the drilling operation and activities conducted on Appellants' land by Appellees because the undisputed and uncontradicted testimony and evidence in this case shows that the Appellants were damaged in the sum of $7,000.00.

The trial court made the following findings pertinent to the point now under discussion:

"Each of the conveyances under which the outstanding three-fourths interest in the minerals in said land was severed from the surface ownership expressly provided that the grantee should have the right of ingress and egress to and upon said land at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals and removing the same therefrom.

"In the early part of April, 1962, United Drilling Company under contract with Lyons and Logan, as operator, commenced the drilling of a well upon the land described in plaintiffs' said amended petition, in search for oil, and that well was completed as a producing oil well before the end of April, 1962, which well was still producing oil at the date of trial.

"After completion of the first oil well on said land United Drilling Company, under contract with Lyons and Logan, moved to another location on said lands and completed a second well as a producing oil well.

"The plaintiffs have not shown that R. Lacy, Inc. was the operator of the leasehold estate upon said land or that R. Lacy, Inc. participated in, or exercised any control over, any of said operators.

"No more of the surface of said land was used or occupied in the drilling, completion and operation of said two oil wells than was necessary in carrying on said activities and no negligence of the operation of said leasehold, Lyons and Logan and the successor partnership known as Lyons Petroleum or of the United Drilling Company has been shown."

■ However, the court did find that in the drilling, completion and operation of the two oil wells, the pastures and crops had been damaged, to the extent of $450.-00, and by its judgment ordered that the appellants recover from appellee, Lyons Petroleum, the sum of $450.00 for such damages. These findings are supported by the evidence.

It was in open court agreed by the appellants that although the action was brought in the form of trespass to try title, the appellants are claiming only an undivided one-fourth interest in and to the oil, gas and other minerals in, under and that may be produced from the land described in appellants' petition and are not attacking any mineral or leasehold interest in said lands other than the leasehold interest of R. Lacy, Inc. and J. W. Griffith.

Therefore, there can be no question of trespass in this case, it being shown and the trial court having so found, that the wells were drilled with rights of entry.

Aside from the validity of oil, gas and mineral lease here attacked, the owners of the remaining three-fourths of the oil, gas and other minerals and their lessees had full rights of ingress and egress upon the land involved. 42 Tex.Jur.2d, Sec. 84, page 200. The proof showed that all operations were carried on by the lessees of such owners.

The oil, gas and mineral lease being in full force and effect at the time of entry complained of by appellants, such entry was not an unlawful one.

■ The appellants did not plead or prove that the appellees used more land than was reasonably necessary for their operations upon said land, nor did they plead or prove any negligence upon the part of any of the appellees.

■ Negligence or a failure to perform a duty required by law is never presumed as a fact, but must be proved by evidence; and the burden of proving it is on the party seeking a recovery of damages by reason of such negligence or failure of duty. Jones v. Nafco Oil & Gas, Inc., 380 S.W.2d 570, 574 (S.Ct.) 1964; McCarty v. White, 314 S.W.2d 155, 157 (Tex.Civ.App.) 1958, n. w. h.

The Supreme Court of this state in Warren Petroleum Corporation v. Monzingo, 157 Tex. 479, 304 S.W.2d 362, 65 A.L.R.2d 1352, 1957, held:

"The oil and gas lessee had the right to use so much of the premises and in such a manner as was reasonably necessary to comply with the terms of the lease and effectuate its purpose. * * *

" * * * In Austin Road Co. v. Boston, Tex.Civ.App., 292 S.W.2d 373, 375, n. r. e., where the plaintiff sued for damages to the premises, the Court held that there was no finding that Austin used more of the land or did anything that was unnecessary to the conduct of the operations authorized by the option and lease. * * * In order for the plaintiff to recover it was necessary that he show that Austin performed the exploratory work in a negligent manner. Respondents cite the following language in that opinion: 'To sustain the judgment, plaintiffs were required to prove that the damages recovered were caused by the negligence of Austin or that it used more of plaintiffs' land than was reasonably necessary to do the things authorized by the contracts.' We agree entirely with that statement of the law. * * *"

The Waco Court of Civil Appeals, 1961, in the case of Kenny v. Texas Gulf Sulphur Company, 351 S.W.2d 612, writ refused, in following the Warren Petroleum case stated: "Under the laws of Texas, the mineral lessee is permitted to use so much of the premises and in such a manner as is reasonably necessary to enjoy the mineral estate conveyed by the lease, and to effectuate its purpose." Also see Guffey v. Stroud, 16 S.W.2d 527, 64 A.L.R. 730 (S. Ct.) 1929, and Stradley v. Magnolia Petroleum Co., 155 S.W.2d 649 (Tex.Civ.App.) 1941, writ refused; Miller v. Crown Central Petroleum Corporation, 309 S.W.2d 876 (Tex.Civ.App.) 1958, n. w. h.; Parker v. Texas Company, 326 S.W.2d 579 (Tex. Civ.App.) 1959, writ refused, n. r. e.

We think appellants' Point of Error No. 2 is without merit and must be overruled.

What we have said disposes of all the errors assigned.

The judgment is affirmed.